106  301<br>126  122

# Appeal of Wentz et al.

1. A testator directed by his will that his executors should " collect and pay all the income arising from my estate both real and personal to my wife during the period of her life," with remainder to his children and their children. He empowered his executors to sell his " real estate " but directed them " to exercise their own judgment as to the propriety of selling or leasing said estate." The said real estate, of which he died seised jointly with two other owners, was chiefly valuable for coal mining purposes, but had never been mined or developed during the testator's life time. The executors leased the coal lying thereunder. *Held,*

(1) That the power to lease the real estate contained in said will included by implication a power to lease the coal lying under its surface.

(2) That the rents or royalties arising from such lease were income, and as such payable to the widow, the life tenant.

2. A testator died, leaving surviving him a widow, a son, a daughter, and a brother. His will provided that his executors should " collect and pay all the income arising from my estate, both real and personal (except as hereinafter stated), to my said wife during the period of her life," and then continued: " Subject to what I have bequeathed to my wife, I will and bequeath all my estate, real and personal, to my chil-

dren, share and share alike as hereinafter stated and particularly mentioned." He then directed that his executors should hold his daughters " share " in trust to " pay after the widow's decease the interest and income of said share to my said daughter, half yearly, during the period of her life and then, at her decease, I direct my executors to pay the principal sum of her share of my estate left in trust to any child or children of hers, that she, my said daughter, may leave surviving her at her death, their heirs and assigns ; but in case my said daughter should not leave any child or children, then I will and bequeath the same, at her death, to her brother." . . . . . " In case my son should depart this life before he is twenty-one years of age, then in that event, should he not leave any child or children of his him surviving at his death, his share is to go to his sister, to be held in trust by my Executors as her share is hereinbefore held as stated ; but should he leave a child or children of his him surviving at his death, then said share is to go to said child or children, his, her or their heirs and assigns, subject as hereinbefore stated." . . . . . " Should the survivor of my children die without leaving any child or children of his or her, him or her surviving at his or her death, then my will is that my estate go to my brother, T. H. W., his heirs and assigns, subject to the right of the wife as herein stated."

The son, after attaining his majority, died in the life time of his sister intestate, unmarried and without issue.

*Held*, That under the will the children each took a fee, and not a life estate, in a moiety of the decedent's real estate, subject only to be defeated by their dying without children ; that the only contingencies in which the executory limitations to the testator's brother could take effect were in the event either of the son's dying childless during his minority after the death of his sister without children, or of the son's dying childless during his minority and the subsequent death of the daughter without children ; that therefore upon the son's attaining his majority his fee became absolute and indefeasible and passed upon his death intestate and without children to the daughter under the Intestate laws and not under the will ; that, thereupon, the executory limitation to testator's brother was defeated, and an absolute and indefeasible fee to both moieties of the testator's real estate vested in the daughter, subject only to the widow's life estate.

*Held* therefore, that testator's brother had no standing to object to a proposed distribution to the widow of the income arising from such real estate.

April 9, 1884.     Before Mercur, C. J., Gordon, Paxson, Trunkey and Sterrett, JJ.     Green and Clark, JJ., absent.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term, 1884, No. 125.

This was an appeal by Isabella Wentz and Henry C. Wentz Administrators of Thomas H. Wentz, deceased, and by Henry C. Wentz in his own right from a decree of the said court dismissing their exceptions to and confirming the report of an auditor in the matter of the account of the Pennsylvania Company for Insurance, etc., Administrator d. b. n. c. t. a. and trustee of the estate of Silas H. Wentz, deceased.

The facts were as follows : Silas H. Wentz died March 3, 1854, leaving surviving him a widow, Mrs. Catharine Wentz, two

children Howard E. Wentz and Kate G. Wentz, and a brother Thomas H. Wentz. His will provided, inter alia, that his executors should " collect and pay all income arising from my estate, both real and personal (except as hereinafter stated) to my said wife during the period of her life." It then continued:

" 4. Subject to what I have bequeathed to my wife, I will and bequeath all my estate, real and personal, to my children, share and share alike, as hereinafter stated and particularly mentioned. . . . . .

" 5. . . . . . The share of my said daughter I will and bequeath unto my executors hereinafter named, to hold the same in trust, securely invested, and after the decease or marriage of my wife, whichever shall first happen, I direct said executors to pay the interest and income of said share to my said daughter, half-yearly, during the period of her life, and then, at her decease, I direct my executors to pay the principal sum of her share of my estate left in trust to any child or children of hers, that she, my said daughter, may leave surviving her at her death, their heirs and assigns ; but in case my said daughter should not leave any child or children of her, her surviving at her death, then, and in that case, I will and bequeath the same, at her death, to her brother Howard Emerick Wentz.

" 6. I will and bequeath unto my son, Howard Emerick Wentz, the sum of three thousand dollars, which I direct my executors to pay to him when he arrives at the age of twenty-one years, and my will further is, in case of the marriage or decease of my wife before my said son becomes twenty-one years of age, then, in either event, I direct my executors to pay my son one-half of his share of my estate when he arrives at the age of twenty-one, and the other half when he arrives at the age of twenty-five ; and in case of her marriage or decease, after my said son is twenty-one years of age, and before he is twenty-five, then, in either event, I desire my executors to pay said son one-half of his share, and the balance of it when he arrives at the age of twenty-five years. And my will further is, in case of the decease or marriage of said wife after the son arrives at the age of twenty-five years, then, when either do occur, I direct my executors to pay my said son the balance of his share at that period.

" 7. In case my son should depart this life before he is twenty-one years of age, then in that event, should he not leave any child or children of his him surviving at his death, his share is to go to his sister, to be held in trust by my executors as her share is hereinbefore held as stated ; but should he leave a child or children of his him surviving at his death,

then said share is to go to said child or children, his, her or their heirs and assigns, subject as hereinbefore stated.

" 8. Should the survivor of my children die without leaving any child or children of his or her, him or her surviving at his or her death, then my will is that my estate go to my brother, Thomas H. Wentz, his heirs and assigns, subject to the right of the wife as herein stated.

" 9. I hereby authorize and empower my executors hereinafter named to grant, bargain and sell, transfer and convey all my right, title and interest of, in and to any and all real estate I have in the county of Schuylkill, State of Pennsylvania, and to execute and deliver to the purchaser or purchasers thereof a good and sufficient title for the same, or any part thereof, to his, her or their heirs and assigns.

" 10. I desire said executors to exercise their own judgment as to the propriety of selling or leasing said estate."

The said Howard Wentz attained his majority in November, 1873, and died August 26, 1874, intestate, unmarried and without issue.   Kate G. Wentz married Harry D. Schell on January 27, 1874, and has had two children, both of whom had died previous to the present audit.   The executors appointed by testator being both deceased, the Pennsylvania Company for Insurance, etc., was appointed administrator d. b. n. c. t. a., and trustee, under said will.   The said administrator filed the present partial account August 30, 1878, showing a balance of over $81,000, of which sum $48,000 consisted of rentals, which had accrued from the lease of the coal lying under the testator's real estate in Schuylkill county, mentioned in the will, of which real estate the testator had been jointly seised with two other owners.   This real estate was of little value for other than coal mining purposes; it had never been developed or mined during the decedent's lifetime; but the coal lying thereunder was subsequently leased by his executors and the other owners.

At the audit, before John M. Collins, Esq., to whom the account was referred by consent, the said $48,000, consisting of the coal rentals, was claimed by testator's widow as the equitable life tenant.   In this claim Mrs. Schell and her husband acquiesced.   Counsel for Mrs. Wentz contended that the power given to the executors by the testator to lease his real estate, gave the rentals of such real estate as fully to the widow as if the mines had been opened in the testator's lifetime; that the claim should be allowed for the further reason that no objection was made to it by any one having any interest in the estate; that Thomas H. Wentz had no standing to object to the allowance of such claim for the reason that the testator had devised to his son and daughter each, subject to

the life estate of his widow, the absolute fee in one half of his estate ; that on the death of Howard E. Wentz, after attaining his majority, there not being any limitation over in such event, his absolute estate in one half of the realty passed to his sister under the Intestate Laws, subject only to the widow's life estate. Counsel for the accountant contended on the other hand that the power to lease given by the will did not include the power to confer unrestricted mining rights, and those mining rights which were conferred by the executors are to be construed as having been made under the power to sell and dispose of the property itself, and that even if these mining rights are to be construed as having been granted under the power to lease, there must be such an apportionment of the sums realized thereunder as will give to the life tenant only so much as is properly due to her, without an entire destruction of the estate in remainder.

Thomas Wentz was not represented at the audit either by himself or counsel.

The Auditor awarded the entire sum of the coal rentals to Mrs. Catharine Wentz, on the ground that such a distribution was intended by the testator in his will ; that the power, given by said testator to his executors to lease his real estate, included a power to lease the coal lying thereunder ; that therefore the widow under said power had as full a right to the rents accruing from such lease as though the mines had been opened¹ by the testator during his lifetime ; that the said rentals should be awarded to the widow for the further reason that Mrs. Schell, in whom the real estate, subject to the widow's life estate therein, had vested indefeasibly in fee,—the one half thereof under the will and the other half on the death of Howard Wentz under the Intestate Laws,— and who alone therefore had any interest in the remainder, acquiesced in such distribution. Upon this point, and as showing that Thomas Wentz had no standing to object to the proposed distribution, the Auditor further reported as follows:—

If the gift over to Thomas H. Wentz was to take effect upon the death of the testator's son as survivor, it was necessary that the daughter should die before him (without leaving children, etc.), and during the period of his minority, and then that he, holding a determinable estate in the whole property, should die (without children, etc.), before the end of his period of minority, otherwise, as we have seen, his estate would become indefeasible. And if the gift over to Thomas H. Wentz was to take effect upon the death of the testator's daughter as survivor, it was necessary that the son should die before her (without leaving children, etc.), and during the

period of his minority, and then, that she, holding a determinable estate in the whole property, should die (without children, etc.), before the end of said period of the son's minority (i. e., before he would have been twenty-one years of age if he had lived), otherwise her estate would become indefeasible.

· The whole disposition of the estate by way of substitution refers to, and is restricted to, the definite and fixed period of the minority of the testator's son, Howard E. Wentz. The event of the gift over to the daughter, or the gift over to the son (whichever might first happen), of a moiety, and the event of the further gift over of the whole to Thomas H. Wentz, were both to take place, if at all, during the minority of said Howard E. Wentz. But neither event took place, and the said Howard E. Wentz having lived to twenty-one years, his remainder in fee, as first given, became absolute and indefeasible. And Mrs. Kate G. Schell, the daughter, having lived through the same period,—i. e., until her brother reached twenty-one,—her remainder in fee, as first given, became absolute and indefeasible.

That Mrs. Schell, the daughter of testator, has a remainder in absolute and indefeasible fee simple in the moiety of this estate devised to her, is further established by the circumstance that, by virtue of her brother's attaining his majority and becoming entitled to an indefeasible estate in his one half of the property, the taking effect of the devise over to Thomas H. Wentz or his heirs and assigns, became forever impossible; because the condition on which said Thomas H. Wentz was to take, if at all, was that the survivor of the children, having acquired a moiety by the cross limitations in the will, in addition to his, or her, own original moiety, and thus holding the whole estate in remainder as devisee, should die without leaving children, etc. No other state of facts was contemplated; but, as the son held an indefeasible fee in his moiety when he died, the daughter then held, as she now does, only one moiety as devisee under the will. She happens to own the other moiety, but that is under the Intestate Laws. She has outlived her brother, but she is not "the survivor" within the meaning of the will, on whose death, etc., the gift over of the whole estate was to take effect. It was not intended that Thomas H. Wentz should ever take one half the estate. Therefore, as the condition subsequent, capable of defeating the estate of said children cannot· take effect as directed by the will, it cannot take effect at all. Hence Mrs. Schell holds the moiety of the estate devised to her in fee unaffected by any condition.

Exceptions filed to this report by the accountant were dismissed by the court and the report confirmed. Thomas Wentz,

thereupon, filed a petition, setting forth the above recited facts and praying the court to open their decree and allow him to file exceptions to the Auditor's report, nunc pro tunc, assigning as reasons, inter alia, that his interest was not recognized by the Auditor, that the coal royalties had been awarded in toto to the life tenant of the widow, instead of being apportioned between her and himself as remainder-man, and that the Auditor had construed the word "children" in the will to be a word of inheritance and not of purchase.

On March 31, 1883, the court entered an order and decree that "petitioner have leave to intervene as a party to the record and to file exceptions to the Auditor's report, nunc pro tunc, and that said exceptions and the petition to open the decree be dismissed." The said exceptions were filed April 16, 1883, and Thomas Wentz subsequently died.

His administrators thereupon took this appeal, assigning as error the action of the court in dismissing his exceptions and those of the accountant, and in confirming the Auditor's report.

*J. R. Sypher*, for the appellants.

*Henry S. Hagert*, for the appellees.

Mr. Justice Gordon delivered the opinion of the court, October 6, 1884.

Silas H. Wentz, by his will, directed his executors to collect and pay over all the income arising from his estate, real and personal, to his wife during her life or widowhood. Under this direction we fail to see in what particular the distribution in the court below was wrong. The rents or royalties from the coal leases were undoubtedly "income" arising from the realty. Had the mines been opened in the lifetime of the testator there could be no question but that they might have been worked even to exhaustion for the benefit of the life tenant. But as the testator confers upon his executors a general power to lease, as well as sell, his real estate, we must regard the mines opened under this power in the same light as though opened in his lifetime, for the manifest intention was that in this manner an income should be derived from the land, and, by the express terms of the will, such income must go to the widow during her life or widowhood. It is true, power is not given in terms to lease the coal, but we take it that such power is found in the general direction to lease the coal property. This land was useful as coal land, and for nothing else; the surface could not be rented, hence the power to lease must refer to the minerals or to nothing. Moreover, Wentz owned but one third of this property in

common with John Gilbert and the heirs of John Rorer, who owned the remaining two thirds, and the testator must have known that his co-tenants would naturally be disposed either to sell the land or to use it in such a way as to make it the most profitable, which would be leasing or working the coal. Under these circumstances we cannot entertain the belief that Wentz intended that his executors should be limited to the leasing of a barren waste surface which could afford little or nothing in the way of rent for the support of his wife and minor children. With these remarks we might dismiss this appeal, were it not that the appellants, who represent the estate of Thomas H. Wentz, deceased, insist that the effect of the decree, as made in the court below, is to defeat the limitation over, found in the will under consideration, to their said decedent. We are not prepared to say that the decree referred to would have this effect, since it involves but a distribution of income only, and therefore could not affect the final disposition of the estate. As, however, one of the reasons given by the Auditor and Orphans' Court, in support of the decree, is that the fee to the entire property vested absolutely in Mrs. Kate G. Schell, *née* Wentz, to the exclusion of Thomas H. Wentz, it may be well to dispose finally of this branch of the case. We are inclined to think with the learned Auditor, that the devise to Kate was in fee, subject to be defeated only on the condition that she should die without issue. Indeed, we do not see how otherwise the cross limitation to her brother Howard could have been supported had the condition occurred on which it was to take effect. He certainly could not, at her death, be substituted to "her share" if she had but a life estate; there would be literally nothing left for him to take. But the fourth clause of the will does undoubtedly put a fee in both the children therein mentioned, and we cannot, under the Act of 1833, cut it down to a life estate as to either unless it appears from the context of the will that such was the testator's intention. In looking over that instrument, from the beginning to the end thereof, we can discover nothing that would tend to essentially modify what is expressed in the clause just mentioned. Nor can we agree that the trust was created for the preservation of the principal of the estate for the daughter's surviving children, or in default of such, for the testator's son or brother. This assumes, without foundation, a life estate only in Mrs. Schell, with contingent remainders over to the survivor or survivors. To a construction of this kind we cannot assent, because, as we have seen, it does not agree with the expressed intention of the testator. The limitations are not of remainders but of substituted fees. As the conditions occur, the devisees, one

after the other, take just that estate, and none other, which was held by his or her predecessor, and when Thomas H. Wentz is reached he takes, if at all, the fee passed by the fourth clause of the will to his nephew and niece, differing in this only, that when it reaches him it is unconditioned.

The fact being thus established that there is in Mrs. Schell a conditional fee, the idea of a remainder or merely alternative limitation to Thomas H. Wentz cannot be entertained, and it only remains to ascertain whether there is yet in him such an interest in the devised estate as would authorize his intervention in the present contention. The materiality of the position here established will be obvious if we but reflect that, admitting but a life estate in Mrs. Schell, her brother being now dead, and the cross remainder to him thus extinguished, in the event of her death without issue, that part of the estate charged with the trust for her life must necessarily go over to Thomas H. Wentz, because there would then be none other in whom it could possibly vest. On the other hand, there being in her a conditional fee, if events so occur that a strict performance of the condition, upon which her uncle's estate depends, becomes impossible, the fee must become absolute in the first taker, and the limitation over necessarily fails. Now, an examination of the will shows us that Thomas H. Wentz was to be substituted, if at all, to the entire estate, and not part of it. But in order that this should happen the daughter must die without issue during the life of the son, and before he reached the age of twenty-one, thus vesting the entire estate, *sub conditione*, in the son, and he, in turn, must also die before reaching that age; or, on the other hand, the estate must vest, in like manner, in the daughter, by the death of her brother before the age of twenty-one, and without issue, otherwise the subsequent limitation must fail.

The above proposition becomes obvious when we reflect that the limitation to Howard must, by the terms of the will, become absolute at the period above stated, and if after that time he should take under the cross limitation, as upon it no condition was imposed, he would of course have vested in him the whole property absolutely, and nothing would be left for his uncle. But as matters have turned out, the conditions contemplated by the testator under which the whole estate might ultimately vest in his brother have become impossible.

Howard lived until he reached the age of twenty-one, hence the limitation to him became absolute, and as he died since that period, his estate has passed to his sister as his heir at law, and not under the will. It is, indeed, contended that Kate's share still continues subject to the conditions originally imposed upon it, and may yet go over to her uncle should she

die without children.  But we are not disposed to take this view of the case, for we will not depart from the letter of the will in order to execute a condition which will despoil the favored legatee of a vested estate.  Mixed conditions of this kind are not favored, and for this Chancellor KENT gives as a reason that they tend to destroy estates, and therefore must be construed strictly.  So it is said in Smith's work on "Executory Interests," sec. 688, that where the vesting of an interest depends upon a condition precedent or mixed, and such condition is not exactly fulfilled, the interest which is to arise therefrom, if not merely alternative in its character, fails altogether.  And if such interest was to arise by way of conditional limitation, in defeasance of a prior interest, such prior interest then becomes absolute and indefeasible, and this because an interest subject to be defeated by a condition subsequent, must as of course, become absolute when the fulfilment of the condition becomes impossible.  Now, it may be, as above contended, that it was the testator's intention to limit a moiety of his estate to his brother should his daughter Kate die childless, but, as was said in Holmes v. Cradock, 3 Ves., 317, that intention is not sufficiently expressed to enable us to execute it.  We cannot make a new will for the testator, and if he has not furnished us with the elements necessary to execute an apparent intention, we must leave it unexecuted, and we do this the more willingly in that it operates to vest the precedent limitation in the child and sole heir of the testator.

The decree of the court below is affirmed at the cost of the appellants.