## Cook et al. v. Cook's Administrator et al.

(Decided Nov. 29, 1935.)

H. H. SMITH and CLARK PRATT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Enon Cook, a citizen and resident of Knott county, died intestate on November 14, 1930, leaving a widow, the appellee, and one of the defendants below, Martha Cook. After his death another appellee and defendant below, William A. Cook, was duly appointed administrator of his estate, and qualified as such. He left surviving him as his heirs some adult children and some grandchildren, who were and are the children of his deceased children; some of the latter being infants and for whom statutory guardians were appointed. Some of the adult heirs, together with the guardians of the infant ones, filed this equity action in the Knott circuit court against the administrator, the widow, and some of the other heirs of the decedent who did not join as plaintiffs, together with certain lessees for oil and gas, for the purpose of fixing and adjudging the proportionate part of the royalties, arising after the death of the deceased from exploration of leases that he and his wife had executed before his death giving to the lessees the right to extract such minerals, that the widow was entitled to, and the extent of her interest therein. At the time of the execution of those leases, and at the

time of decedent's death, he owned all of the oil and gas in and to a described tract of land in Knott county which he had reserved in deeds which he had made conveying the surface and all of the other minerals, except oil and gas, to the grantees in those deeds. He also at the times mentioned (the execution of the leases here involved and at his death) owned another tract of land which was separated from the first one above by other lands in which he had not conveyed any prior interest whatever, and in which he had never parted with the surface, and his residence was located thereon. We shall hereafter refer to it as the "home tract."

Prior to the death of the decedent, three paying gas wells were sunk on the home tract, and he collected royalty thereon up to his death. After that event, three paying gas wells were sunk on the other tract covered by the leases executed by decedent and his wife during his lifetime; and the subject-matter of this litigation is: (a) What proportion of the royalties accruing after decedent's death is the widow entitled to as her distributive share in the estate of her deceased husband; and (b) what is the extent of her interest in such share? Before taking up those questions for determination, we deem it proper to state that by a proceeding had in the Knott county court the surface of the home tract of decedent was divided in kind, and in which proceedings the widow was allotted her dower. Whether or not any of the three wells that had been sunk on it prior to the husband's death was embraced in the boundary of her allotted surface dower is not made to appear from the record, nor does it appear within whose allotted portion are located any of those wells. However, the absence of such information we regard as immaterial as affecting the one way or the other the questions for solution. We shall, therefore, endeavor to determine them independently of such facts, upon the assumption that they are wholly irrelevant for reasons that we shall endeavor to put forward during the course of the opinion.

It should also be stated that the Knott county court in the division proceedings expressly declined to attempt any division of the involved royalty arising from either tract, but left that question open to be settled and determined by either agreement between the parties, or by the judgment of the court with proper jurisdiction in an action or a proceedings before it for that purpose. Pursuant thereto, this action was insti-

tuted, and the Knott circuit court, in which it was brought, upon final submission adjudged that decedent's widow was entitled to one-third of such royalties absolutely and throughout her life. Questioning the propriety of that judgment, plaintiffs prosecute this appeal, vigorously insisting that after the rendition of the judgment in the partition proceedings the widow is not entitled to any more than the income from the one-third of the royalties allotted to her by the judgment of the trial court, and that it erred when it gave to her the absolute estate in all of that one-third.

That argument, it will be perceived, even if true, would apply only to the royalty accruing from wells on the home tract, since decedent owned no surface in the other tract to be allotted and apportioned or in which the widow might be assigned a prescribed boundary as her dower, and as a consequence no such allotment was made as to that tract. The argument, as so necessarily confined to the home tract, is sought to be sustained by a reliance on a number of our past opinions (some of which are embraced in the list hereinafter inserted) in which we held that a fund arising from and created out of facts on all fours with those appearing in this case should be regarded as "rents, income and profits" of the husband's dowable real estate under the provisions of section 2138 of our present Statutes, and that, as prescribed therein, the surviving widow should receive one-third thereof absolutely "until dower is assigned her." Some of our prior cases so holding are Crain v. West, 191 Ky. 1, 229 S. W. 51; Lemaster v. Hudson, 214 Ky. 467, 283 S. W. 439; Williamson v. Williamson, 223 Ky. 589, 4 S. W. (2d) 392, 394; Collins v. Lemaster's Adm'r, 232 Ky. 188, 22 S. W. (2d) 567. The still later case of Wyly v. Kallenbach, 256 Ky. 391, 76 S. W. (2d) 34, dealt exclusively with a fund arising after the death of the owner of the real estate from its continued operation for the purposes to which he had devoted it in his lifetime and before any assignment of dower in that particular unit of real estate, and we held that the widow was entitled to one-third of that fund absolutely, because it came within the provisions of section 2138, supra, of our Statutes. It will, therefore, be seen that our holding therein does not create in all respects a completley fitting precedent to be followed in succeeding cases arising from facts similar to the instant ones, although there are principles recognized therein which

have a more or less influential bearing upon the proper solutions of the two questions, supra, presented by this record.

From our holdings in the Crain, Lemaster, Williamson, and Collins Cases, supra, and others that might be cited (there being no conflicting ones), it is argued by learned counsel for plaintiffs that, inasmuch as it was there determined that the portion of the fund that the widow should receive was one-third thereof from the date of her husband's death "until the assignment of dower," it was an implied negation of her like right, or a continuation thereof after the assignment of surface dower, and that the court did not have before it in any of those cases the proper permanent royalty allowance to the widow after the assignment of surface dower, nor the question of extent of title or interest that she then took in whatever pro rata she might then be entitled to. They then proceed to argue that the fund accruing after the allotment of dower from such royalties ceases to be rents, income, or profits within the contemplation of section 2138, supra, of our Statutes, but becomes a part of the corpus of the decedent's real estate, and that the rights of his surviving widow therein are to be measured by the provisions of section 2132 of the same statutes giving to the surviving spouse "an estate for his or her life in one-third of all the real estate of which he or she, or any one for his or her use, was seized of an estate in fee simple during the coverture," unless the right thereto had been relinquished during the marital union. From such premises it is then insisted by plaintiffs' counsel that the court erred in adjudging the widow in this case the absolute title to the one-third portion of such fund in this case instead of confining her interest in that one-third to the income thereof, leaving the fund made up of her one-third allotment to be distributed among the decedent's heirs following her death.

On the other hand, it is argued with equal emphasis by counsel for the widow that the fund for distribution under the facts of this case should be held to be personal property of the decedent, and to which their client is entitled to participate to the extent of one-half thereof under the provisions of the latter portion of the same section (2132), supra, of our Statutes. However, they have prosecuted no cross-appeal for their client

seeking to enlarge her allowance in the royalty fund from one-third of it to one-half of it; stating in their brief that she is satisfied with the judgment as rendered, and, since it was less, according to their contention, than the judgment should have given her, appellants are in no condition to complain. It is our task to solve the disputes thus brought to us by the respective parties in accordance with what we conceive to be the correct principles of law to be deduced from precedents made by appellate courts, including this one, as well as from statements of the law by standard text-writers on the subject, so far as such precedents have been made, and also by reason and analogy in the determination of other principles of law, either judicially declared or enacted in a statute, relating and applying to the rights of a surviving spouse in and to the property of the other upon the latter's death.

In approaching the decision of the questions, we do so with appreciation of its difficulties and also with an awareness of the confused condition of the declared applicable principles of law by different appellate courts. Such confusion is not confined to a diversity of opinions between different courts, but our investigation has developed the fact to be that in the same court the same contrariety of views have been expressed in cases as they would be presented and determined. It, of course, grows out of the fact of the difficulty encountered in determining what is the particular kind or character of property that composes the fund to be distributed, i. e., whether it is personalty or realty, or a species of mixed property, and in some jurisdictions, including this one, the question is rendered more complex because of more or less qualifying statutory enactments, one of which is section 2138, supra, of our Statutes. Having said this much, we now proceed to a determination of the difficult task confronting us.

We expressly held in the Crain and Williamson Cases, supra, that the widow was entitled to one-third of such a fund absolutely throughout her life, and that such right on her part was not confined to the time when dower might be assigned in the surface of the husband's real estate, from beneath which the minerals were taken pursuant to a right to do so created by him in his lifetime. But the attempted adjudication in both of those cases, extending such rights to the widow after the allotment of dower in the surface of her husband's

real estate, might be questioned as being only dictum, since the question was not directly presented by those records and the holdings therein, continuing such right after the allotment of dower in the surface rights of her husband's real estate, was not absolutely necessary to a disposition of either case. We have been unable to find any domestic case wherein the record presented the question attempted to be determined by such possible dictum. In every one of our cases, so far as we are aware, the question involved only the rights of the widow up to the assignment of dower in the surface of her husband's real estate.

The case of Eagers' Guardian v. Pollard, 194 Ky. 276, 239 S. W. 39, 40, is also published in 43 A. L. R. 808. Following the opinion in the last publication is an annotation on the subject of "Rights of life tenant and remaindermen inter se as to oil and gas." In the course of that annotation the rights of a life tenant (which includes a widow's dower estate) in and to what is designated "opened mines" (and which embraces openings subsequently made pursuant to authority given by the husband in his lifetime), as well as the rights of such tenant to extract mineral from land when none have been opened in the manner indicated, are set forth. Opinions of this court are cited therein dealing with such phases of the subject, and which are: That the life tenant has the right to operate opened mines and appropriate the proceeds therefrom, but has no right to open any on his own initiative without the joint action and approval of the owner of the remainder estate in the land; and there are also cases cited in that annotation dealing with the identical question presented in this case. To set forth all of those cases, and recite that which each one of them decided, would be a task beyond the necessities of this opinion, since the reader may gain that information by reading it.

On page 813 of 43 A. L. R., the annotator collects cases from other jurisdictions supporting the judgment appealed from herein, thereby determining the correct answer to question (b) as did the trial court, and from which we take this excerpt: "In harmony with the rule as to other minerals, a tenant for life, being entitled [to the extent of the life interest] to the royalties of wells that were open and in operation when the life estate commenced, and not merely to the income from such royalties. Andrews v. Andrews [1903] 31 Ind.

App. 189, 67 N. E. 461; Richmond Natural Gas Co. v. Davenport [1905] 37 Ind. App. 25, 76 N. E. 525 [obiter]; Fairbanks v. Warrum [1914] 56 Ind. App. 337, 104 N. E. 983, 1141 [obiter]; Woodburn's Estate [1891] 138 Pa. 606, 21 A. 16, 21 Am. St. Rep. 932; Campbell v. Lynch [1917] 81 W. Va. 374, 94 S. E. 739, L. R. A. 1918B, 1070; Minner v. Minner [1919] 84 W. Va. 679, 100 S. E. 509; Koen v. Bartlett [1895] 41 W. Va. 559, 23 S. E. 664, 31 L. R. A. 128, 56 Am. St. Rep. 884, 18 Morr. Min. Rep. 289.'' It is immediately followed by comments made on our Crain Case, supra (our Williamson opinion on account of the recency of its rendition not being brought to the attention of the annotator), but it was not cited in support of the inserted excerpt, since, as we have seen, the question therein concerned only the widow's right before assignment of dower in the surface of her husband's estate.

In the domestic Pollard Case, among other questions discussed and determined, we also declared that: ''Mineral wells that are opened up after the death of the fee owner, but in pursuance of an express or implied power conferred by his will, are not distinguishable from those opened after his death in pursuance of a contract, and in several such cases royalties realized therefrom very properly, it seems to us, have been held in other jurisdictions to be income. See Thornton on Oil & Gas, vol. 1, sec. 301, and cases there cited.'' But it was concluded in that case that the solution of the question as therein presented was governed by certain directions in the will of the fee owner in creating the trust under consideration. The excerpt, however, did determine that the fund to be distributed was income and was not composed of any of the corpus of the husband's fee-owned real estate, and which, it would seem, supports (if standing alone) the contention herein made by counsel for appellees, i. e., that the widow of Enon Cook should have been adjudged one-half of such fund as prescribed in section 2132, supra, of our statutes, instead of one-third as given under section 2138. But the question therein turned on the construction of the trust created by the involved will.

In the Williamson opinion, we approved the inserted excerpt from the annotation, supra, to the Pollard Case in 43 A. L. R. 811, and which was done in support of a prior statement in that opinion, saying: ''The authorities so far as we have been able to

ascertain construe the royalties accruing under contention [b] not to exhaustion, as a species of realty right in which the widow is entitled to be endowed for her life in one-third thereof." Contention (b) therein referred to was one embodying the correct allotment of the widow in royalty funds arising from leases not conveying title to all of the lessors minerals, but only to such portions thereof as the lessee extracted, and which is the same character of lease as is here involved. Following that excerpt we also said in that opinion that: "The rights of the widow as life tenant under cases like this, where the separate mineral estate was created by the husband before his death, are altogether different from her rights in and to royalty from mines opened pursuant to rights granted by herself and the remaindermen after her husband's death." In that opinion many authorities are cited among which is a standard text, saying: "Accordingly it has been held, on the one hand, that if they [mines] were opened during the husband's life, or by the heir before assignment of dower, the widow is entitled to dower, which consists of one-third of the royalty or profits of the workings; but she has not the right to open unopened lands or quarries." 9 R. C. L. 579, par. 22. Cases listed in that opinion support that text.

From the condition of the authorities as thus far examined it would seem that the rationale of our opinions lean to the view adopted by the trial court both as to the ratio of allotment to the widow (one-third) and as to the extent of her interest therein, i. e., an absolute one instead of one for and during her life only, and which would entitle her during her life to collect only the interest or income from that one-third. The reasons for such apparent position appear to have emanated from and based upon the conception expressed in the Williamon opinion, and the same being found in text-writers, supra, and opinions from other courts, to the effect that the fund to be distributed, which was produced under the facts similar to those involved in this case, is income, or at most partakes of the nature of both personalty and realty. It is realty, perhaps, in so far as it is composed of representative value of the quantity of mineral actually taken out, notwithstanding we held, as we have seen, in the Pollard Case, that without some qualifying fact such a fund was income and did not represent any portion of the corpus of the realty

from which the mineral was taken. But it should also be remembered that in so far as the payment of royalty, howsoever measured, creates or pays for the right in the lessee or his assigns to continue to explore all parts of the leased land (including the surface dower) for the purpose of extracting the involved mineral, it to that extent was personalty, since it represented in part the consideration to be paid for the leasehold rights.

That conception was adopted and approved by us in the recent case of McIntire's Adm'r v. Bond, 227 Ky. 607, 13 S. W. (2d) 772, 774, 64 A. L. R. 630. In that case McIntire executed a lease entitling the lessee to explore his land for oil and gas, and died without any operations being commenced thereunder. Thereafter, the surface of his land was partitioned, but no effort was made to partition the mineral (oil and gas), the right to explore the entire tract for which having been conferred on the lessee in the lease executed by the decedent before his death. Mineral in paying quantities was later found upon certain portions of the entire tract pursuant to operations begun under the lease after the division, and the heir upon whose allotted portion such wells were sunk claimed the exclusive right to the royalties therefrom, because the mineral was obtained from a well located on his allotted portion. The other heirs made a contrary contention, and insisted that a well located on any of the allotments of surface inured to the benefit of all the heirs and of every one entitled to a portion of the surface prorata. We upheld the latter contention for reasons stated in the opinion, and in doing so we employed this language:

"What effect did the partition proceedings then have? That, in turn, must depend on what the royalty for the developed oil or gas well pays for. In the note found in 31 Harvard Law Review, 882, to the case of Campbell v. Lynch, 81 W. Va. 374, 94 S. E. 739, L. R. A. 1918B, 1070, it is said that it is a return for the right to take oil from the land whence the oil is taken. It is partially on this theory that the later case of Musgrave v. Musgrave, 86 W. Va. 119, 103 S. E. 302, 16 A. L. R. 564, overruled the Campbell Case, supra, and it is fundamental to the decisions of Osborn v. Arkansas Territorial Oil & Gas Co., 103 Ark. 175, 146 S. W. 122; Kimbley v. Luckey, 72 Okl. 217, 179 P. 928; Pierce Oil Corp. v. Schacht, 75 Okl. 101, 181 P. 731; Fairbanks v. Warrum, 56 Ind. App. 337, 104 N. E. 983, 1141;

Northwestern Ohio Natural Gas Co. v. Ullery, 68 Ohio St. 259, 67 N. E. 494. The error in the assumption necessary to these decisions is so well pointed out in the dissenting opinion of Judge Poffenbarger in the Musgrave Case that we quote from it: 'Manifestly it is that, but it is just as clearly something more than that. Besides paying for the oil taken out, it holds the lease on all of the land and oil included within its boundaries. It maintains the lessee's right to carry his operations to every part of the tract and precludes operation or mining on any part of it by the owner and everybody else except assignees of the lessee. How then can it be said to be only pay for the oil taken out? A full and true definition of anything must accord fully with its nature and characteristics. "A definition is a description of a thing by its properties or a conception by its attributes." Webster. As a royalty does more in fact and in law than pay for the oil taken out, a description of it, calling it pay for oil taken out, is true as far as it goes, but it stops short of revelation or narration of its complete nature and character. Any intelligent layman on the street knows it does more than that and no lawyer can maintain his client's case in any court, upon the proposition that the royalty only pays for the oil taken out.'

"Now the royalty being a rental payment not only for the oil taken out but also for the holding of the rest of the land, when the land was partitioned among the heirs as was done in this case without mention of the lease or the royalties to accrue under it, such royalties or rents must be apportioned among the heirs in accordance with the principle of apportionment of rents. In 36 C. J. 380, it is said: 'Where an estate under lease is severed, whether by a partial grant of the reversion, or, upon the death of the lessor, by a descent to the heirs at law, or by a taking under an execution against the lessor, the rent which is said to issue out of the land and to be incident thereto will be apportioned between or among the respective owners. The right of the reversioner to an apportionment of the rent may rest on privity of estate or on privity of contract, and attaches at the moment of conveyance and without more; nor is the consent or attornment of the tenant material to its operation.' See, also, Freeman, Cotenancy & Partition, sec. 346.

"We are aware that a different result from that here arrived at was reached in the Osborn v. Arkansas-Territorial Oil & Gas Co. supra; Kimbley v. Luckey, supra; Pierce Oil Corp. v. Schacht, supra; Fairbanks v. Warrum, supra; Northwestern Ohio Natural Gas Co. v. Ullery, supra, and Musgrave v. Musgrave, supra,. Cases, but as pointed out, we cannot agree with the assumption fundamental to them, and, although overruled by the Musgrave Case, we regard the Campbell Case and the dissenting opinion of Judge Poffenbarger in the Musgrave Case as sound. The Pennsylvania courts. have arrived at the same result reached in this opinion. [Wettengel v. Gormley, 160 Pa. 559, 28 A. 934, 40 Am.. St. Rep. 733; Id., 184 Pa. 354, 39 A. 57], though on a different theory."

From such determinations it would seem to inevitably follow that the trial court in this case correctly answered the questions presented, except in so far as it might be questioned, because no dower interest appeared to be involved in the McIntire Case. But it is our conclusion, however, that, if there had been such an interest involved in that case, we would have reached the same result as affecting the widow's right. We base that statement upon two facts: (c) That, as seen, we have uniformly adjudged to the widow an absolute title to one-third of the royalty, under leases like this, from the time of her husband's death until dower is assigned; and (d) that the inherent nature of dower, with the elements measuring its extent, plus the character of property (hidden and fugitive), from the extraction of which the fund to be provided is created, all require that the fund should be distributed in accordance with the judgment appealed from in order to meet the equities to which the widow is entitled. We will briefly elaborate those two factual divisions, beginning with the first one.

In the Williamson opinion we said: "The instant case, however, does not involve the question as to the right of a widow to the minerals under a specific boundary of land assigned to her as dower, but to her aliquot part of the entire royalties arising from minerals extracted from under the entire tract. The Crain Case, supra, held that before assignment of dower she was entitled in opened mines, or prior leased land, to one-third of the entire royalty accruing from the whole of the land, but her right upon final assignment of dower

was expressly left open. We can see no difference in principle between the right of the surviving widow to all the royalty accruing from mines located upon her specific allotted surface dower, and one-third of the entire royalty accruing from the entire tract when there has been no surface allotment of dower.'' Strange to say that conclusion seems to be also entertained by appellants' counsel when in their brief they say: ''What is the difference between what a widow should receive from the time of her husband's death until dower is assigned and what she would be entitled to receive after the assignment of the dower? Under the Statute, section 2138, she is entitled to one-third of the rents, and profits of all the husband's dowable real estate until dower is assigned. After the assignment of the dower she is entitled to all the rents and profits of one-third of the husband's dowable real estate under section 2132 of the Statute. What is the difference in result? Under our calculations, the result is exactly the same. Could we be wrong about that? Is not that exactly what the legislature of this state intended when it enacted section 2132 and 2138 of the Kentucky Statutes?'' Those remarks are found under heading II of the division of the brief which, as therein stated, is ''A widow's rights under section 2138 of the Kentucky Statutes are the same and were intended by the legislature to be the same in effect from the time of her husband's death until dower is assigned that she would be entitled to receive after assignment of the dower.''

In the somewhat laborious investigation we have made, we have found other cases agreeing with the deductions of counsel and which embodies, in substance, the theory that by alloting to the widow before assignment of dower one-third absolutely of the character of fund here involved, our Legislature, in enacting section 2138, supra, of our Statutes, intended to make provision for the widow during the period following her husband's death until dower might be assigned, equal to that which she would receive after such allotment; i. e., the proportionate part of the total income from the whole of the divided unit that will be hers, arising from her one-third dower after such allotment, and which would be 100 per cent. of the income, absolutely, arising from her one-third pro rata. But there might be instances, and which is true in this case, that the producing mines or wells would not be located upon the

specific surface boundary allotted to her, and in which case she should not be deprived of her lawful participation in the fund, though arising from minerals extracted from openings and operations located on other parts of her deceased husband's entire unit tract of land.

In elucidating fact (d), as constituting one of the reasons for the conclusion we have reached, we deem it necessary to refer to some of the conditions affecting the extent of dower rights to which a widow may be entitled in her husband's dowable estate. In allotting her dower consisting of one-third of her husband's realty, the value of the entire estate or surface unit composing the realty should be ascertained and her allotted portion should be equal to one-third of that value, including the mansion. By way of illustration, her husband might have owned at the time of his death, say 300 acres, of value of $10 per acre, making the entire farm of the value of $3,000. Under a portion of the tract, say 100 acres, valuable minerals may have been discovered, and which fact would enhance the value of the entire tract to say $20 per acre. In that case it would be inequitable to measure the widow's dowable rights by allotting to her, only one-third of the surface of her husband's land, which would be 100 acres, if it should happen to be located on that portion not known to contain minerals. Her surface dower would then be burdened with possible exercise of easement rights possessed by the lessee, which, if done, might practically destroy the usefulness of her surface for agricultural or other purposes. She, clearly, would be entitled in that instance to a considerably increased acreage of surface, or in lieu thereof a substituted right to participate in the royalties for extracting the minerals from under that portion of her husband's farm lying outside of the boundary of her allotted dower; and which illustration but emphasizes the rule we adopted and applied in the McIntire Case, supra, and which we conclude, for the reasons stated, should apply for the benefit of a widow taking only a life estate, as well as to an heir taking an absolute estate in partition proceedings.

Indeed, a somewhat analagous conclusion was reached by this court in the case of Stevens' Heirs v. Stevens (the widow), 3 Dana, 371. There the dowable estate consisted in ferry rights and privileges owned

by the husband at the time of his death. Sufficient land to operate the ferry at each termini thereof was also owned by him. Judge Robertson, writing for the court, did not overlook the character of property represented by the franchise privilege, and in announcing the right of the widow in and to the entire unit of property, making up the completed ferry, said: ''The widow is entitled to one third of the land, and one third of the profits. * * * Her right, and her only right, is to one third of each; and her right in the ferry, is one third, not of the ferry, but of its profits, or of its use; because a ferry being an incorporated hereditament, is indivisible.''

Moreover, there is at least a debatable question as to what is comprehended in our statute, supra (section 2138), and our opinions in the Crain, Williamson, and other cases cited, by the phrase ''until dower is assigned her,'' as applied to minerals, and especially those of a fugitive nature, as are oil and gas. The question being whether or not that phrase is confined only to the surface of real estate where the husband before his death has separated what was his original unit of real property into separate estates of surface rights and mineral rights? Much could be said, and many cases could be cited, to the effect that the giving of such leases creates two separately owned parts of the once unified tract of land, and the Legislature, in employing the phrase in the statute, may have had in mind only a division of the surface and not a division of the widow's part in the separate estate created in the minerals by the husband before his death. In leases like the one under consideration, as the cases, supra, confirm, the right to explore for the particular mineral is what the lessee obtains. Such a right as a distinct unit of property has no surface. It is, therefore, impossible to make an allotted portion of it by metes and bounds, and, that being true, no assignment of dower in such rights can ever be made, and the royalty in payment therefor, as between the widow and the heirs, must be apportioned according to their interests in the particular species of property, which should continue throughout the widow's life so far as her right is concerned. That result would seem to follow as a necessary consequence flowing from the nature of the right, and from our opinions fixing the widow's allowance therein preceding the laying off of her dower. If the

property to be divided is, because of its nature, incapable of being laid off in dower, in the sense of the statute, then the rights of the widow should continue as fixed by that statute throughout her period of ownership therein.

In reaching the conclusions herein expressed, there are many phases of the case that we have not considered, and, perhaps, some of our prior opinions may be in apparent conflict with some of the reasons advanced. Also, the reasoning which we have endeavored to employ might also be questioned, but such conflicts, if any, should be harmonized if possible, or, if impossible, they should be overruled. We have endeavored to perform our task as best we could in view of the difficulties surrounding the questions.

Wherefore, for the reasons stated, we conclude that the judgment, under the facts, was and is correct, and it is affirmed; the whole court sitting.