## May et al. v. Chinn et al.

March 8, 1946.

George R. Smith for appellants.

R. W. Keenon for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

The question for decision on this appeal is whether or not a life tenant may execute a valid mineral lease on the land he holds. The chancellor adjudged that the lease executed by the life tenant was void and the lessees appeal.

Miss Hannah Morgan owned a tract of land containing 64 acres located on the Kentucky River in Woodford County. By her will dated October 21, 1937, which was probated August 7, 1941, she devised this land to George P. Chinn for life with remainder to George M. Chinn in trust for the latter's daughter, Ann Hardin

Chinn, who takes a fee simple title at the life tenant's death upon reaching 30 years of age.

On September 10, 1943, George P. Chinn executed a mining lease to M. P. May and C. B. Gray for a term of five years which covered the fluor-spar and other like minerals under this land. A royalty was reserved in favor of the lessor of 9% of the gross sale price of all minerals removed and sold from the leased premises. There is a provision in the lease that it may be renewed for an additional five year term but that the lease terminates at the death of the lessor, since he only had a life estate in the farm.

While Miss Morgan owned this farm, her cousin, George P. Chinn, in 1916 or 1917 opened a tunnel in a cliff near the river for the purpose of determining whether or not fluor-spar could be produced in paying quantities. There was a spar mine, known as the Twin Chimney Mine, operated by James Gentry, just over the river in which Mr. Chinn was interested and he obtained the power from that mine to open this tunnel by piping compressed air across the river. Both Mr. Gentry and Mr. Chinn testified there was no charge made against Chinn by the Twin Chimney for the power used in opening the tunnel, and that what little spar was found and removed was not in paying quantities and it was left on the ground along with the debris removed from the tunnel. Other witnesses corroborated Chinn and Gentry in their testimony that no spar was sold from this mine and that it produced so little that the spar was left on the ground. Charles Warner, and perhaps others, testified for appellees that the spar taken from this tunnel was barged across the river and processed by the Twin Chimney Mine. This was specifically denied by Chinn and several persons who worked on the tunnel, as well as by Gentry.

Mr. Chinn testified that he had no contract or agreement with Miss Morgan when he opened this tunnel, which was about 92 feet long, 4 feet wide and 7 feet high. He further testified that neither he nor she ever received anything for the spar removed by him. The record does not show whether or not Miss Morgan knew of this exploration by Chinn. It was stipulated that this property was not worked as a mine from the time George P. Chinn abandoned it until the present lessees started

operating it through the old tunnel. The proof shows that the tunnel remained in the same condition it was in when Chinn abandoned it.

Appellants' evidence is to the effect that they made three entries, each from 45 to 60 feet deep and that two of them were made from the tunnel originally opened by Chinn and that the third was made at the foot of the hill. It was testified that they expended approximately $5000 in their operations and that they removed and shipped considerable spar.

The petition avers that the principal value of the land is the minerals which underlay it, and George P. Chinn testified to that fact. He described the place at which the tunnel was opened as a "rough cliff" and "just boulders and negro-head rock." Upon being recalled to the stand he further stated that during Miss Morgan's life she raised tobacco, hemp, rye and clover on this farm and that he likewise cropped the farm upon becoming its life tenant.

It is the contention of appellants that a life tenant, unless precluded by the wording of the instrument creating the life estate, may work mines that were opened by the owner of the fee prior to the commencement of the life estate; also, that the life tenant may mine land which is practically worthless for any other purpose. That this is the rule is not disputed by appellees, nor could it be, under such authorities cited by appellants as Daniels v. Charles, 172 Ky. 238, 189 S. W. 192; Crain v. West, 191 Ky. 1, 229 S. W. 51; Goosling v. Pinson, 198 Ky. 57, 248 S. W. 248; Cook v. Cook's Adm'r, 261 Ky. 501, 88 S. W. 2d 27; Smith v. Harris, 276 Ky. 529, 124 S. W. 2d 786; Annotations 43 A. L. R. 811, as well as many foreign cases.

But in the present instance there was no mine opened by the owner of the fee before the life tenant came into possession. The record does not show that this tunnel was opened with Miss Morgan's consent. Besides, it could only be considered a test tunnel, or exploration, and when Chinn found it did not produce spar in paying quantities he abandoned it. None of the spar taken from this exploration was sold.

We would have a different question if this tunnel had been opened by the owner of the fee and had it produced

spar in paying quantities and later the price of that material had dropped so low as to make further mining unprofitable, resulting in the mine being abandoned by the owner of the fee, and years afterwards during the life tenant's possession the price had advanced to a figure which justified the resumption of mining. See Restatement of the Law of Property, sec. 144, p. 477.

Nor can it be said that this 64 acre farm was practically worthless for anything but mining purposes and that the rule set out in Thornton on Oil and Gas, sec. 302, p. 764, is applicable, to-wit, that where the only use the life tenant can make of the land is to mine same it must be presumed that the creator of the life estate intended for the life tenant to mine the land, otherwise the life estate would be useless. Appeal of Wentz, 106 Pa. 301, 307; Raynolds v. Hanna, C. C. Ohio, 55 F. 783, 801. When George P. Chinn testified that the principal value of the land was the mineral under it, he evidently referred to the place where the tunnel was run into the cliff, as the uncontradicted proof shows that both the creator of the life estate and the life tenant farmed this land and that it produced the usual crops grown in the section where the farm is located.

Having reached the conclusion that the life tenant was without authority to lease the land for mineral development, it is not necessary to consider appellees' contention that the lease should be cancelled because of the lessees' delay in paying royalties to the life tenant.

The judgment is affirmed.