## Warfield Natural Gas Co. v. Marcum.

March 19, 1946.

**814**

Wells & Wells and B. J. Pettigrew for appellant.

J. B. Clark and J. W. Thompson for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—
Reversing.

Birch Marcum and his wife, Nancy Marcum, were the joint owners of 80 acres of land in Martin county. Nancy Marcum died intestate in 1926, leaving her husband and ten children. On June 8, 1935, Birch Marcum and eight of the children, together with the spouses of those who were married, executed an oil and gas lease on the 80-acre tract of land to the Warfield Natural Gas Company. On September 13, 1935, Rebecca Marcum Triplett, one of the children who had not signed the lease, and her husband, Andy Triplett, conveyed to the Warfield Natural Gas Company their undivided interest in the oil and gas under the tract of land. On March 17, 1941, Norma Marcum Hammond, one of the ten children, and her husband, Gordon Hammond, ratified and approved the lease theretofore executed. Norma Hammond was under 21 years of age when the lease was executed in 1935. On September 18, 1935, a gas well was completed on the land, and the lessee paid the royalty of $300 a year until March 5, 1941, as follows: To Birch Marcum one-half thereof, or $150 a year, and to the ten children of Birch Marcum and Nancy Marcum, or their grantees, the remaining one-half. On March 5, 1941, Birch Marcum notified the lessee that he owned a curtesy interest in one-half of the land, and demanded one-third of the royalty due on his deceased wife's part of the land, or $50 a year. Thereafter the lessee retained $50 out of the annual royalty, but refused to pay it to Birch Marcum. On July 30, 1942, Birch Marcum brought this action against the Warfield Natural Gas Company to recover one-third of the royalties on that portion of the land owned by Nancy Marcum at the time of her death. The children of Nancy Marcum and the assignees of those who had sold their interests also were made defendants. The lessee filed an answer and cross-petition in which it averred that the plaintiff, the surviving husband of Nancy Marcum, had no interest in or right to royalties accruing on that part of the land owned by Nancy Mar-

cum at the time of her death since the lease thereon was executed by her heirs after her death. In its cross-petition it asked for a judgment against the children of Nancy Marcum in the event it should be held that the plaintiff was entitled to any part of the royalties under the lease of the Nancy Marcum portion of the lands. The chancellor adjudged that the plaintiff, Birch Marcum, was entitled to one-third of the royalties from the Nancy Marcum land under the lease of June 5, 1935, and that he "recover from the defendant, Warfield Natural Gas Company the sum of Fifty Dollars per year from September 18, 1935, and so long as the well mentioned in this action is a producing well and the lease above mentioned is in full force and effect, according to the terms of said lease, and during the life of the said plaintiff." The Warfield Natural Gas Company was given a judgment on its cross-petition against the other defendants. The company has appealed, and seeks a reversal of the judgment on two grounds: (1) Appellee's interest in the royalties on the one-half interest owned by Nancy Marcum at the time of her death is not absolute but is a life interest, and he is entitled only to the use of one-third thereof during his natural life; and (2) appellee is estopped from claiming any part of the royalties on the Nancy Marcum interest prior to the time he notified appellant of his claim.

The rule in this and practically all other jurisdictions is that where property is held for life and after the life tenancy begins there is development not authorized under any lease or authority in existence at the beginning of the life tenancy, the life tenant is only entitled to interest on the royalties during the continuance of the life estate, and the corpus of the royalties will go to those who take as remaindermen. Mills v. Mills, 275 Ky. 431, 121 S. W. 2d 962; Cook v. Cook's Adm'r, 261 Ky. 501, 88 S. W. 2d 27; Collins v. LeMaster's Adm'r, 232 Ky. 188, 22 S. W. 2d 567; Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757; 33 Am. Jur., Life Estates, Remainders, and Reversions, secs. 329 and 330; Annotation in 43 A. L. R. 811. In Collins v. LeMaster's Adm'r, supra, it was held that the widow and remaindermen may join in an oil and gas lease and agree orally, or in writing, how the royalties are to be apportioned among them, but in the absence of such an agreement such an apportionment must be made according to law. It was

also held that where mines are opened or wells drilled by the widow and remaindermen after the death of the owner who left no will or contract controlling the matter, the widow is entitled only to a life estate in one-third of the accruing royalties. The same rule applies, of course, to the husband's interest in his deceased wife's real estate. In Volume 1 of the Restatement of the Law of Property, Comment b, under sec. 119, reads: "When the owner of a possessory estate for life, not being privileged to make the removal on his own behalf, joins with the owner or owners of the subsequent interests in permitting the removal of timber, mineral, or oil deposits, from the land as to which such estate exists, then, in the absence of a specific agreement, otherwise fixing the respective rights of the parties, such owner of the estate for life receives as issues and profits under the rule stated in this Section, the use for his life of all sums paid for such permission."

It follows from what has been said that the chancellor erred in adjudging the appellee absolutely one-third of the royalties.

We find no merit in appellant's claim of estoppel, which is based upon the theory that appellee remained silent when it was his duty to speak. As defined in 19 Am. Jur., Estoppel, sec. 34: "Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed."

Here the appellant was not ignorant of the true facts, and there was no fraud, culpable negligence or misleading conduct on the part of the appellee which would raise an estoppel and preclude him from asserting his rights. As said in Cox v. Simmerman, 243 Ky. 474, 48 S. W. 2d 1078, 1080: "* * * where the basis for a claimed estoppel is silence or omission to give notice,

the party relying thereon must have been without actual knowledge of the true state of facts, and without means of acquiring such knowledge, as by reference to public records.''

The judgment is reversed, with directions to enter a judgment in conformity herewith.