## McLean Estate

ANDERSON, P. J., January 17, 1952. — Alexander McLean died April 10, 1949, and his will dated February 10, 1948, was duly probated, and the first and final account of his executors was audited in due course, and a distribution schedule was filed June 27, 1950, by which, in harmony with the provisions of paragraph 8 of his will, the sum of $119,373.20 was awarded to his executors, who were also his designated trustees.

Among assets distributed to such trustees was the right of decedent under a lease, executed by him on January 1, 1943, and granting lessees right to mine certain coal deposits, designated as "Vulcan Mine", in consideration of royalty of 25 cents per ton for coal mined.

While such lease, in addition to giving the privilege of removing coal, also included certain surface rights as well as the right to the use of buildings which had been formerly used by the lessor in connection with his mine operations, no portion of the royalty was, by the terms of the lease, allocated for the use of such surface and buildings.

The coal covered by the lease was inventoried by the trustees at the inception of the trust at the sum of

$12,000 and such value had been reduced by reason of coal mined, to the value of $8,885 when decedent's rights under such lease were sold by the trustees. In this sale price were also included decedent's rights in the two houses and some slate which were carried on the records from the creation of the trust at the fixed inventory value of $4,150.

The net proceeds from the sale of such property was the sum of $18,281.52 of which amount, on basis of the then inventory value, the sum of $12,461.16 was allocated by the trustees as representing the sale price of the leased coal and the balance as representing the price of the house and slate sold.

Because of conflicting claims by beneficiaries of trust as to distribution of the sum received from such sale the trustees filed this interim account now before us for audit for the purpose of having such issue determined.

The dispute stems from the testator's directed distribution of income of trust fund, found in the eighth paragraph of his will.

Such paragraph provides that the trust shall endure for period of 10 years after his death and directs that in interim the income from such trust shall be divided in designated fractions among his children and grandchildren, but in setting forth such fractional interests of his son, Wilbert F. McLean, and his grandson, James M. Hall, and his granddaughter, Mildred L. Hall, he provided that these beneficiaries should not share in royalties of the Vulcan Deep Mine Coal (the coal interest which was sold by trustees).

The trustees in their audit petition aver that desiring to remain neutral in the matter, they do not suggest distribution other than as the court may interpret provisions of the will to require, but state that some of heirs have requested that one third of such sum be distributed as income among those who have not been eliminated from share of royalties, and the balance

presently among the other beneficiaries, and, as bearing on the matter, have directed the court's attention to section 9 of the Principal and Income Act of July 3, 1947, P. L. 1283.

Prior to enactment of the Principal and Income Act of 1945, and later Act of 1947, this type of distribution was determined by case law which is fully outlined in the opinion of Mr. Justice Drew, in Bruner Est., 363 Pa. 552-556, where it is stated:

"It is well settled in this Commonwealth that a life tenant is entitled to the royalties from an oil well drilled or a coal mine opened in the life time of testator, and, if no well be drilled or coal mine opened in testator's lifetime, but trustees are empowered by the trust instrument to lease the oil or coal, the same principle of law is applicable: *Wentz's Appeal*, 106 Pa. 301. On the other hand, if there were no wells drilled or mines opened and no power given to lease the oil or coal or authorization given to operate such business, the royalties received, or to be received, under the terms of the lease are principal and not income. See*McFadden's Estate*, 224 Pa. 443, 73 A. 927. Oil in place, being a mineral, is part of the realty, and it is like coal or any other natural product which in situ forms part of the land: *Appeal of Stoughton et al.*, 88 Pa. 198."

While the opinion of Mr. Justice Drew, quoted from, was rendered after passage of the Act of 1947, the will involved was dated, and decedent died, prior to effective date of both of the Acts of 1945 and 1947, and provisions of such acts did not govern issue.

In the instant case, however, decedent's will was dated subsequent to the effective date of the Act of 1947, and its pertinent provisions would govern the issue here.

Section 2 of such act provides that nothing contained in the provisions of such act would prevent the creator of a trust from directing the manner of the ascertain-

ment of income and principal. The court is of the opinion that this section does not govern allocation of royalties in this case, even though testator, in setting up some of the fractional interests in income, does say that such persons were not to receive any part of the royalties from the "Vulcan Mine." The court interprets such wording not to be a direction by testator that such royalties should be considered as entirely income, but to be a direction that such part of them as could be properly allocated to income should not be shared in by such particular income beneficiaries.

Whether such provision, since the principal is eventually to be divided in the same fractional interests as is provided for income, would deny the right of those eliminated from sharing in royalties as income, from sharing in such part of the royalties as are deemed principal, is not required to be determined at this time.

Section 3(3) of such act deals with disposition of a fund realized from sale of income producing assets excluding in section 3(4) sale of "wasting assets" such as are here involved. Section 9 provides that where a lease was made prior to creation of trust (as is the case here), and no disposition has been made of net proceeds, one third of net price received shall be considered as income and the balance as principal.

The will in this case authorized trustees to sell at their discretion any of the assets of the trust and made no special disposition of net proceeds of any sale. Under authority of such section 9, then one third of returned purchase price allocated to sale of coal will be considered as income presently to be awarded as such to income beneficiaries and the balance reawarded to trustees as principal to be invested and the portion of sale price allocated to sale of houses and slate awarded to general principal of trust.

Since, however, decedent specifically provided that certain of his income beneficiaries were not to receive

any part of royalties (replaced by recited portion of the sale price) it is our present opinion that all income realized hereafter from investment of such two thirds so allocated to principal during life of trust, should be paid to those not excluded from sharing in original royalty return, and in same proportional shares as provided by will.

Since those entitled to share in royalty, and now as income, in the one third of amount allocated as sale price of coal take different interests, it follows that such one third or the sum of $4,153.72 and income to be received from investment of remaining two thirds during period of trust, should be awarded on the same relative basis.

We determine such beneficiaries' interests to be: Edith M. Berthold, 1/3; Jennie Beaumariage, 1/3; Wallace L. McLean, 1/9; Howard Alex McLean, 1/27; Wallace James McLean, 1/27; Thomas Robert McLean, 1/27; Chas. Wm. McLean, 1/27; Kay Frances McLean, 1/27; Peggy Ann McLean Beaumariage, 1/27.

It is noted that in account stated all of the royalties received by trustees as such from the operation of the Vulcan Mine, under lease to date of sale of such mine were paid to the designated beneficiaries as income. On basis of present finding that testator in words used did not direct that all of such royalties should be deemed income, it would follow under the provisions of section 9 of the Principal and Income Act of 1947 that only one third of such royalties should have been paid out as income and balance deemed principal to be invested to produce income.

The total net royalties reported in account as received by trustees and disbursed by it as income, is the sum of $2,197.98 which was paid as follows: Edith M. Berthold, $732.65; Jennie Beaumariage, $732.65; Wallace L. McLean, $244.21; Howard A. McLean,

$81.41; Wallace J. McLean, $81.41; Thomas R. McLean, $81.41; Charles Wm. McLean, by guardian, $81.41; Peggy Ann McLean, by guardian, $81.41; Kay Frances McLean, by guardian, $81.42.

Since under the court's interpretation of provisions of will and of recited section 9, only one third of such royalties should have been distributed as income, and since, under findings made, there is a larger sum presently distributable to such beneficiaries and in same proportions, the trustees before making distribution, should deduct and restore to principal such overpayment and in the same proportions, from shares now payable to beneficiaries.

On the basis of such discussion and findings, now, June 17, 1952, it is ordered and decreed:

1. That accountant be surcharged with the overpayment to income beneficiaries to whom royalties were paid, in the sum of $1,465.32, and that account as stated, with exception of such surcharge, be and is hereby confirmed.

2. That accountant recoup the amount of such surcharge proportionately from income presently distributable to beneficiaries who received overpayment.

3. That subject to such credit provision the accountant presently distribute one third of sum allocated to sale of coal, or the sum of $4,153.72 as income to those beneficiaries entitled to receive such income, and add to principal of trust the remaining two thirds, or sum of $8,307.44, plus the sum directed to be withheld from income beneficiaries, or the sum of $1,465.32.

4. That such principal sum so created be segregated from other principal fund of trust, so as to enable income produced by it to be accurately determined in any future distribution of income.

5. That after distribution of income as directed, the remaining funds and assets be awarded back to trustees for purposes of the trust.