# CHARLESTON.

PARSONS & SWEENEY OIL COMPANY v. McCORMICK.

Submitted June 6, 1910.    Decided February 11, 1911.

MINES AND MINERALS—*Oil Leases—Sufficiency.*

The oil lease involved in this case is indefinite in failing to describe the tracts of forty acres each to be held for each oil well, and therefore the remainder of the whole tract cannot be ascertained, and the clause for surrender to the lessor of the remainder of undrilled land is void and ineffectual.

Appeal from Circuit Court, Wood County.

Action by the Parsons & Sweeney Oil Company against J. M.

McCormick and others.   Judgment for defendants, and plaintiff appeals.

*Reversed and Remanded.*

*J. W. Vandervort* and *Clyde B. Johnson,* for appellant.

*James A. Watson, Dave D. Johnson* and *R. E. Bills,* for appellees.

BRANNON, JUDGE:

Ralston owned a tract of 630 acres of land and in April, 1901, made a lease of 130 acres of it to Miller for oil and gas.   The lease was for five years.   It contained this clause: "If no well is commenced within 30 days this grant shall become null and void.   The second well to be commenced within Sixty days after No. 1 is completed.   The third well to be commenced within sixty days after ·No. Two is completed.   The fourth well to be commenced within sixty days after No. Three is completed.   Each well drilled shall hold Forty (40) acres; balance *undrilled* land to be surrendered."   This lease came by assignment to the Parsons & Sweeney Oil Company, and it drilled two wells within the time prescribed by the lease, ·producing paying oil.   It drilled no more wells. In August, 1908, the heirs of Ralston made an oil lease to Bills of the whole 630 acres, "excepting however from this lease 80 acres off of the southwestern portion of the 130 acres leased by G. H. Ralston in the year 1901, to C. C. Miller."   Bills had full notice of the Miller lease if that were material.   L. A. Ralston and William Ralston and J. M. McCormick obtained some interest in the second lease by arrangement with Bills, and they were going on a part of the 130 acres leased to Miller to put up a derrick preparatory to drilling a well for oil, when the Parsons & Sweeney Oil Company sued out an injunction to restrain them from so doing, and an order having been made by the judge of the circuit court, the oil company appeals.

The second or Bills lease was made on the theory that as but two wells had been drilled on the 130 acres, within the five year term under the Miller lease, only 40 acres could be claimed under it for each well, making 80 acres, and that the undrilled remainder of the 130 acres, was forfeited by failure to drill other

wells.    The claimants under the Bills lease admit a right to
80 acres out of the 130 acres in the oil company under the Miller
lease, claiming that two tracts of 40 acres each of the two wells
drilled under the Miller lease must be set off, and that the bal-
ance is forfeited from the Miller lease and reverted to the
Ralston heirs, and thus left them free to declare such forfeiture
and make the second lease, not under that clause expressly pro-
viding for a forfeiture for failing to drill the first well for thirty
days, but under the clause saying that each well drilled should
hold forty acres, and the balance undrilled should be surrendered.
Under this clause must be set off two parcels of 40 acres each.
Just here we meet trouble in the questions, What parcels?
Where do they lie?   What their description and bounds?   Where
shall we locate them?   How identify them?   Where shall we
begin to survey them?   In what form?   How many corners and
angles?    The lease does not indicate in the slightest.    It is a
familiar principle that to enforce specific performance of a con-
tract for the sale of land, that contract must not be, in any
essential element, indefinite or vague, and description of the land
is an essential, indispensable element.    *Crawford* v. *Workman,*
64 W. Va. 10.    "Forty acres off the Spring Fork end of my
tract of 147 acres on Beech Fork in Calhoun County", was too
indefinite for enforcement.    *Westfall* v. *Cottrill,* 24 W. Va. 763.
That is somewhat like this case, but a little more definite.    A
deed of conveyance, whatever its character, must have this legal
certainty, and so must an exception or reservation in it.    *Har-
ding* v. *Jennings,* decided this term, citing *Butcher* v. *Creel,* 9
Grat. 201.    "For a valid exception, the thing excepted must be
described with as much particularity as is required in the descrip-
tion of the land conveyed."    Hopkins, Real Prop. 417.    If
a part of a tract of land is to be forfeited, why, on these prin-
ciples, must not that part be described with adequate particular-
ity?    If a part is to be surrendered, the same principle must by
analogy apply.    Now, the Miller lease gave him a right to explore
the whole 130 acres, and when he took possession and drilled
the first paying well, he had possession of, and a vested estate
in, the whole 130 acres, and to get a part out from under his
lease, to divest a part, by forfeiture or surrender, that part must
be defined.    But before the part to be surrendered can be learned,
the two parcels of 40 acres each must be found and located, and

we have no means of doing this, no corners or pointers in the lease.

A complaint to quiet title to land which describes the land as "the west half of the southeast corner of section five, township twenty five north, range eleven, except ten acres around well number one", held bad because of indefiniteness of description. *Jones* v. *Mount,* 30 Ind. App. 59. A lease like this provided that lessee should complete a well every 90 days "or surrender lease excepting ten acres for each paying well." Five wells were drilled. The lessor sued to declare the contract void as to the undrilled land, and recover it, and it was held that "the contract did not further describe these tracts of ten acres each which were to be excepted out of the 100 acres; and without a sufficient description thereof there could be no definite description of the remainder of the 100 acres, the right of the appellee in which were to be surrendered." *Monaghan* v. *Mount,* 36 Ind. App. 196. Somewhat like a claimant under an inclusive survey, the claimant must locate the reservations. *Logan* v. *Ward,* 58 W. Va. 357.

Affidavits were filed to show that the oil company had a surveyor to lay off 80 acres out of the 130 acres, and make and deliver to the oil company a plat showing the 80 acres conceded to the oil company, and the part claimed under the second lease; that representatives of the oil company and one of the Ralston heirs were present and participating in this location, and that the oil company representatives acquiesced in this location, and admitted that it was entitled to only the 80 acres. Affidavits contradicting this were filed. Let us take the affidavits filed by the defendants. Can this evidence cure the defect or want of description of the tracts of 40 acres? Description of the land is an essential element of the lease deed, and it is proposed by this evidence to give, what it does not, a description, to add to the writing. We cannot even say to prove what specific land was meant to be held by each well, as no specific tract was meant. "The note or memorandum being required to embody all the essential terms of the contract, excludes parol evidence of the essential terms of such prior contract." "The contract must be certain in itself, or capable of being made certain by reference to some other written evidence." Wood, Stat. Frauds, 657 and note p. 659; Brown, Stat. Frauds, § 416. The statute does not allow parol evidence

to add to the writing a material element. Why should it be allowed to insert in a lease required to be written something not in it? And our cases allow oral evidence to help an indefinite writing to only a limited extent, where the document does not point out. It cannot be used to supply a defect in its terms, and can only go to explain what is in it, some index or ear mark in it to which oral evidence can give explanation. Where is the sign or ear mark in this case?

Can this evidence be read to destroy the oil company's right by proving a disclaimer by a representative of the company of any right in the 130 acres beyond the 80 acres? Surely not, because mere oral disclaimer of title cannot divest it.

Can this evidence operate as a surrender, treating it as a surrender? Surrender is a yielding up of the possession of an estate for life or years to him who has the immediate reversion or remainder, wherein the particular estate may merge or drown by mutual agreement. Minor's Real Prop., § 1212. It is a mode or kind of conveyance, a secondary conveyance, a giving up or back of a particular estate. By common law it could be done by word of mouth, and surrender of possession; but since the statute of frauds it must be done by deed. Minor's Real Prop., § 1217; Wood, Stat. Frauds, § 54. The surrender by a tenant under such a lease as this must be by deed. Underhill's Landlord & Tenant, § 704. It is true that surrender may be effected by specific oral agreement, provided there be such agreement and it be accompanied by actual surrender of possession. *Cunningham* v. *Cunningham,* 46 W. Va. 1. There is no evidence of such delivery of possession. But I view this surrender clause as one of forfeiture, which might be executed or enforced by a second lease, if it were not for the uncertain character of the lease as above specified.

We reverse the order dissolving the injunction, and reinstate the injunction, and remand the cause.

*Reversed and Remanded.*