# CHARLESTON.

HEFNER *et al.* v. LIGHT, FUEL & POWER *Co.*

Submitted November 9, 1915.·  Decided November 23, 1915.

1.  MINES AND MINERALS—*Mining Leases—Delay.*

    Payments made, as required in an oil and gas lease, as compensation for periodical postponement of operations on the land leased, though barring recovery for such delay, do not preclude recovery for the breach of other independent covenants or stipulations of such lease.  (p. 218).

2.  SAME—*Mining Leases—Covenants—Construction.*

    Covenants for quarterly delay rentals, performed in part, and one for the payment of a stipulated sum as compensation, unpaid, for total failure to operate on the land leased, are independent covenants.  Performance of the former does not excuse non-performance of the latter.  (p. 218).

3.  SAME—*Mining Leases—Surrender.*

    A lessor may refuse to accept a surrender, tendered, of an oil and gas lease, though the lease contains a clause therefor, when the lessee denies liability on an unperformed covenant of the lease, by him to be performed in lieu of development and not postponement of operations; and such refusal is justified when the lessee denies liability·on the covenant broken, and the surrender expressly states acceptance thereof will operate as a waiver of performance of the covenants broken.  (p. 218).

4.  SAME—*Mining Leases—Rights of Assignee.*

    Although the assignee of an oil and gas lease is not liable for the consequences of a failure by his assignor to drill a well on the land leased before the assignee acquired title to such lease, yet if he continues to pay the delay rental in lieu of drilling after he acquires such title he is liable for the consequences of his own failure.  (p. 220).

Error to Circuit Court, Braxton County.

Action by M. W. Hefner and others against the Light, Fuel & Power Company.  There was a judgment for plaintiffs, and defendant brings error.

*Reversed and remanded.*

*Haymond & Fox,* for plaintiff in error.

*Hall Bros.,* for defendants in error.

LYNCH, JUDGE:

On January 18, 1902, M. W. Hefner and others leased to C. E. Bonwell and others 450 acres of land situated in Braxton county, for oil and gas purposes. The duration of the term was ten years and as much longer as either of such products should be obtained from the land. Though the lease contains many stipulations usual in such instruments, the covenants of the lessees, so far as material to the solution of the inquiries arising on this writ awarded defendant, are (1) for the completion of a well by May 1, 1902; or, if not then completed, (2) payment of $225 quarterly thereafter until oil is produced; (3) payment of $1000 in case no well is drilled; and (4) the right of the lessees to surrender the lease upon payment of the specific sum mentioned in such agreement.

By mesne assignments, title to the lease and the right to exercise the privileges thereby conferred, vested, in July, 1902, in defendant Light, Fuel & Power Company, a corporation organized and doing business under the laws of this state. Except as to delay rentals paid to October 18, 1910, such covenants remained unperformed at the expiration of the ten year period. This action in assumpsit the lessors thereafter brought to recover the unpaid quarterly rentals due on and after October 18 and the $1000 agreed to be paid for failure to drill a well on such land.

To the action defendant pleaded the general issue, and tendered and was permitted to file three special pleas, on which issues were regularly joined. By the first special plea, defendant averred a tender of the sum stipulated as a condition for the surrender of the lease and a surrender thereof; by the second, the amount of the quarterly delay rentals paid; by the third, the statute of limitations; all of them being pleas in bar of the recovery sought.

Defendant did on October 24, 1910, offer to surrender the lease. At that time the quarterly rental due six days before was unpaid; and if plaintiffs were entitled to the $1000 payment, in addition to the compensation for delay in drilling, under the provisions of the lease, a question later discussed, it was then also due. By express terms, the lease limited the exoneration to be effected by the surrender to liabilities there-

after to accrue, and not those then in arrears. When the surrender was tendered, plaintiffs insisted on payment by defendant of the $1000 required by the lease, and the October delay rental; and liability therefor defendant denied, and declined to admit or recognize it.

Without deciding whether the surrender tendered was formally executed by the authorized agent of defendant, to that end empowered by corporate action, a question raised by plaintiffs, we may say that, conceding the instrument tendered and refused by them to have been duly authorized and executed, plaintiffs were not bound to accept it without compliance by defendant with the unperformed covenants devolving on it as assignee of the lease. Exoneration therefrom was clearly intended by the instrument so tendered. It specifically stated that the cancellation and annulment of the lease, thereby to be effected, was with the ''mutual consent of the parties thereto; and, in consideration of the surrender and cancellation of this lease, the said lessees and those claiming under them are hereby released from all claims of payments due or to grow due under said lease''. To the quarterly rental due October 18 plaintiffs clearly were entitled. It was past due when defendant made the offer to surrender and tendered the consideration prescribed by the lease.

Did the lease require payment of the $1000 and quarterly delay rentals, in the event the lessees or their assigns surrendered the lease or permitted it to lapse, without drilling on the land? The amount of the rentals was paid and accepted under the covenant to complete a well on or before a date definitely agreed on and expressed in the lease, or, in lieu thereof, to render to lessors the compensation likewise determined and specified. The contract executed by the parties makes that intention clear and indisputable. It provided for a well, or compensation instead until oil was produced from the land leased, or the lease lapsed or was surrendered. The lessees thereby agreed to drill a well on the land in any event, and to pay for the exercise of the right impliedly conferred to postpone operations, but not to defer the attempt to develop beyond the period fixed for the termination of the privileges granted. The parties contemplated active operations and productive results. The terms of the

grant indicate its purpose. Develop within a reasonable time, or pay for delay in performance, or surrender the lease: these are the terms of the instrument, when reduced to their simplest form and confined to the covenant for development. Virtually, that is the only reasonable inference to be drawn from the language employed to express the real intention of the parties. The payments of the amounts stated in the plea were made and accepted for postponement. As long as the lessees or their assigns continued to postpone and pay, and the lessors to accept compensation for such delay, the lease remained in force and effect. The lessors could not interfere. Acceptance precluded any act on their part tending to .disturb or prevent the exercise of any right conferred by their agreement. It effectually signified acquiescence in deferring the operations originally contemplated.

But the covenant to pay $1000 in the event the lease was surrendered, or permitted to expire without any attempt by the lessees or their assigns to test the leased land, was intended to exact compensation for the exercise of either right or privilege. It was separate, distinct, dissociated from the covenant to drill or pay rentals. Though they may have become in part cumulative, that condition has resulted from inaction, and not from a cause originally contemplated by the parties. What they apparently had in view at the date of the lease was payment of the $1000, in the event the lessors or those claiming under them should take advantage of the surrender clause, or permit the lease to lapse by expiration of its terms without any attempt to drill on the land. The cumulation of the payment of delay rentals and the compensation agreed on for such failure to drill at all can not be deemed preclusive of the right to recover rentals in arrears at the expiration of the term of the lease, or the $1000 agreed on for a different purpose. The latter would have become due and payable whether defendant surrendered the lease, or allowed it to expire by limitation in the absence of a drilled well on the land. To the delay rentals maturing on and after October 18, 1910, until January 18, 1912, and to the $1000, plaintiffs, we think, are clearly entitled; and the instruction to the contrary was erroneous.

It is also argued that, as defendant acquired the lease after

May 1, 1902, it is not chargeable with the consequences of the failure to complete a well by that date. Performance of that requirement was optional. Complete a well or pay for postponement, was the agreement. The predecessors of defendant chose the latter alternative. They paid; it thereafter continued the same policy. Defendant might have drilled or surrendered the lease. It did neither. Nor is any charge made against defendant on account of any dereliction on the part of those under whom it claims. Only the right of recovery for breaches of covenants subsequent to the ownership and control of defendant is averred in the declaration.

Nor is the contention that the tender of the five dollars and the surrender formally executed by the agent of defendant, or notice of an intention to surrender before the October 18 delay rental was due, sustained by *Urpman* v. *Oil Co.*, 53 W. Va. 501, 510, cited by counsel. The paper there involved was an executory contract for the sale of land and personal property, entered into for fraudulent purposes, and later rescinded and destroyed with the assent of the parties thereto; and, though thereafter its enforcement was sought by a decree requiring specific performance, denial of relief in part was predicated upon such rescission, as appears from the opinion rendered in the case. In this case, however, acceptance of the tendered surrender was refused, only conditionally, the conditions imposed being, as we have seen, those the performance of which plaintiffs properly could require as a basis of their acceptance. They declined to accept the surrender for these reasons, and because it purported to discharge defendant from the performance of the very obligations which it had assumed as assignee and on which it then denied its liability.

Again, while it is true, as argued by counsel, that defendant at no time had a vested interest in the oil and gas contained within the land leased, not having produced either product therefrom, it did have the exclusive right to enter thereon and explore therefor during the term granted, and, when obtained, to appropriate to its own use certain portions thereof if oil, and if gas all of it upon rendering compensation therefor. Plaintiffs could not re-lease the land for the purposes granted, so long as defendant complied with the provisions of the lease held by it. And to the extent of quarterly pay-

ments, theretofore made, it had complied, and by no act of the lessors could it be deprived of such benefit. Acceptance of payments estopped them from interfering with the exercise of the privileges granted.

Wherein the statute of frauds applies to the pleadings and proof, counsel do not definitely point out, and we fail to apprehend the argument briefly addressed to that subject. Though cited, *Oil Co.* v. *McCormick*, 68 W. Va. 604, affords no enlightenment, except upon the one question that while at common law a surrender could be made "by word of mouth", and surrender of possession by one in possession of land under a contract with the owner, yet under the statute of frauds a surrender to be effectual must be by deed. That question, however, does not arise here, for reasons heretofore stated. There was no legal surrender by defendant of the lease herein involved, because of defendant's failure and refusal to comply with and perform definite covenants of the lease.

Plaintiffs' claims were not barred by the limitation. Though it pleads the statute, defendant does not rely on its plea. No argument is based thereon. The action was brought in ample time.

For reasons stated, the conclusion follows that the trial court did not err in refusing the motion of defendant to exclude the evidence introduced by plaintiffs, but did err in permitting the copy of the surrender offered by defendant to be filed as part of such evidence, and in giving instructions inconsistent with the views herein expressed. Hence, our order will reverse the judgment, remand the case for a new trial, and award costs and damages to defendant in error, plaintiff below, as the party substantially prevailing.

*Reversed and remanded.*