## Riggsby et ux. v. Swiss Oil Corporation et al.

(Decided October 16, 1931.)

FRED HOWES for appellants.

E. L. McDONALD for appellees.

Opinion of the Court by Judge Thomas—Reversing.

On May 2, 1916, appellants and plaintiffs below, W. T. Riggsby and wife, gave to A. C. Albin an oil and gas lease on their farm in Johnson county containing about 75 acres. The consideration paid, and agreed to be paid, by the lessee, as recited in the lease, was $1 paid at the time; one-eighth of all oil produced and saved from the premises; and $100 annually for each gas well from which gas was produced and transported. The lease was for a term of ten years from its date "or as long as gas or oil is found in paying quantities." It was further provided therein that, if no well or development was commenced within twelve months, then the lease should be null and void, "unless second parties shall thereafter pay at the rate of ten cents per acre for each year drilling is delayed," and, "in case no paying well is drilled on said premises within ten years from date, this grant shall be null and void." Furthermore, "on payment of one dollar by second party and upon abandonment of the premises by second party, or at expiration of rights and privileges granted, or failure to pay rental by second party, then this lease shall be null and void and binding on neither party." There was also a provision, in substance, that, if a gas well was produced upon the premises, then the lessor should have a sufficiency thereof "free of cost to heat and light one dwelling." Other provisions of the lease are not pertinent to the questions involved, and will not be recited.

By mesne conveyances and transfers one of the defendants and appellants, Union Gas & Oil Company, became and was the owner of that lease in 1920. No drilling or other development was ever made upon the leased premises; but the lessees who were the owners of the lease at the time, after the first year of the ten-year term, paid to the lessors the stipulated acreage rental, and which was accepted for the first three years, beginning at the commencement of the second year of the term; there being no delay rental required for the first one. After accepting such payments, plaintiffs as such lessors concluded to no longer do so, and notified the then lessee (Union Oil & Gas Company) of that fact, and requested that the leased property be developed for the purposes for which it was leased, fixing a reasonable time within which such development should commence. That request was ignored, and an action was filed by the present plain-

tiffs in the Johnson circuit court against defendant Union Gas & Oil Company to have the lease forfeited, under a well-established principle of law declared by this court in numerous cases, some of which are: McNutt v. Whitney, 192 Ky. 132, 232 S. W. 386; Keystone Gas Co. v. Salisbury, 192 Ky. 643, 234 S. W. 290; Satterfield v. Galloway, 192 Ky. 780, 234 S. W. 448; Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58; Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, 207 S. W. 698; Kelley v. Hardwick, 228 Ky. 349, 14 S. W. (2d) 1098, and many others, some of which are cited in those opinions. That action was removed by defendant therein to the United States District Court for the Eastern District of Kentucky, and on May 4, 1923, a compromise agreement was reached between the parties (which was reduced to writing) modifying the 1916 lease in many particulars to be hereinafter noticed, and upon its due execution that action was "dismissed settled."

The preamble to that compromise agreement recited the execution of the 1916 lease and other facts, some of which we have above referred to, and it was then stipulated:

"Now, therefore, this contract witnesseth: That in consideration of the sum of Four Hundred Dollars ($400.00), cash paid by the party of the second part unto the parties of the first part, the receipt whereof is hereby acknowledged, and the cost of this suit excluding, however, a docket or attorney's fee, said parties of the first part hereby agree that the said suit shall be dismissed settled, and further agree that *during the life* of said oil and gas lease bearing date on the 2nd of May, 1916, to wit: for ten (10) years from said date or as long as gas or oil is found in paying quantities on the premises covered thereby, that they will make no further claim or demand for rentals, development or offset wells, unless they be entitled to an offset well or wells under section 4 of chapter 24 of the Acts of the General Assembly of Kentucky for the year 1920, effective March 18, 1920; and, as an additional and further consideration for such agreement made by the parties of the first part, the party of the second part hereby agrees to pay unto the said W. T. Riggsby and Nancy J. Riggsby, his wife, their heirs, personal representatives, or assigns, beginning on

the 1st day of January, 1924, *and each ensuing year,* the sum of Two Hundred Dollars ($200.00) until one or two wells are actually drilled on said premises, and so long as the said annual gas well rental is paid by the party of the second part such payment shall be so construed and given the same effect as though one or more paying gas wells had in fact been drilled upon the premises *during the ten (10) years next ensuing the date of said lease;* but, in the event **both** of said wells should be drilled and prove not to be paying gas wells, then the said annual payment hereinbefore provided for shall terminate, but, in case one only of such wells produces gas in paying quantities then the annual payment aforesaid shall be reduced to One Hundred Dollars ($100.00) to cover the regular gas well royalty on such paying gas well, and, if more than two wells are drilled, the oil or gas royalties provided for in the said lease shall be paid for such number of wells as may hereafter be drilled in excess of two." (Our emphasis.)

There was also contained in it practically the same provision for the furnishing of free gas to the lessors (plaintiffs) for one dwelling on their premises. The $400 mentioned in the written compromise was paid at the time, and the $200 annually was also paid up to January 1, 1928, which was one year longer than the ten-year limitation in the original 1916 lease. However, in the meantime the Union Gas & Oil Company sold all of its rights in and to the leased premises to its codefendant here, the appellee, Swiss Oil Corporation, and the latter assumed the obligations imposed upon its transferer by the two writings, and it paid some of the $200 annual payments; but no lessee, we repeat, ever at any time drilled a well of any character upon the leased premises, although a pipe line was laid across them with the consent of plaintiffs, the lessors. After the $200 annual payments stipulated for in the compromise agreement were no longer paid because of defendants concluding to forfeit and surrender the lease, this action was filed by plaintiffs against them to recover such annual rentals as were then past due, and during the pendency of the cause other annual installments that had accrued were sought to be recovered by amended petitions. In the same way plaintiffs also sought to recover alleged damages to their leased premises because of defendants' failure to de-

velop the leased premises, plus the fact of its having sunk other gas wells on adjoining leases owned by it near plaintiffs' premises, which, as alleged, had thereby drawn the gas from under them.

The Union Gas & Oil Company objected to the service of process on it, but nothing it did in support thereof was ever acted on by the court, and only the defendant Swiss Oil Corporation made defense to the merits. It denied some of the material allegations in the petition, and in another paragraph it was averred that the above-inserted stipulation in the compromise agreement obligating it to pay the $200 annual royalty therein provided for was only for and during the ten-year period of the life of the original lease, which expired in April, 1926, but which is voluntarily extended on its part by paying it up to January 1, 1928, when it abandoned the lease and later notified plaintiffs to that effect, and in which they acquiesced; and such acquiescing facts were relied on as an estoppel on the part of the plaintiffs to maintain this action, even if it should be held that the compromise terms were not terminated upon the expiration of the original ten-year lease, unless the lessee saw proper to extend it by complying with those terms.

Following pleadings made the issues, and the only testimony heard upon the trial was the deposition of plaintiff, W. T. Riggsby, who testified to the facts leading up to the execution of the "compromise agreement," and the payment of the annual royalty installments of $200 therein provided for up to and including the year 1927, when defendant ceased paying, and also ceased furnishing gas to the residence of plaintiff, and later removed its pipe line that had been constructed across the leased premises. But we do not construe plaintiff's testimony as an acquiescence on his part to the removing of that pipe line, except in so far as he took no legal steps to prevent it. We doubt if such mere failure on his part would create that character of acquiescence required by the law to give it an estoppel effect; but, whether so or not, plaintiff had no interest in that pipe line, nor did its removal or its remaining under his land have any effect upon his rights as lessor, since defendant could do with it as it saw proper. It was no part of the leasehold estate created by the lease. The only conduct of plaintiff with reference to the removal of the pipe line was that he did not expressly object thereto, nor did he manifest by appropriate court proceedings any such objection,

and which we conclude was for the all-sufficient reason that neither the removal nor the continuation of that pipe line was any concern of his.

Plaintiff testified in his deposition, following a claim made in an amended petition which he filed, that he was damaged in the sum of $100 per year on account of being deprived of the use of gas in his dwelling house, and he arrived at that sum upon the theory that it would cost him that amount to supply fuel for heating and cooking and for lights of other material, but which, we are convinced, was not the proper measure of such damage, since the true criterion would be the difference in the value of the use and occupancy of plaintiff's premises with a supply of gas for such purposes, and without it.

The first part of the compromise writing (after naming the parties to it, which were plaintiffs who were parties of the first part, and the Union Gas & Oil Company, party of the second part), consisted of whereases in which the fact of the execution of the original lease, its transfer by assignment through a number of persons until it reached the Union Gas & Oil Company, and the filing of the suit against the lessee therein for development of the lease, were recited, and then immediately followed the terms of the agreement, the material portions of which we have hereinbefore inserted. It will be observed that it was therein stipulated (a) that lessors therein (plaintiffs here) "agree that during the life of the said oil and gas lease bearing date on the second day of May, 1916, to wit: For ten (10) years from said date, or as long as gas or oil is found in paying quantities on the premises covered thereby," they "will make no further claim or demand for rentals, development, or offset wells," etc. Later in the agreement it was stipulated that, the lessee (then Union Gas & Oil Company), in consideration for such agreement on the part of plaintiffs, the lessors, agreed (b) "to pay unto the said W. T. Riggsby and Nancy J. Riggsby, his wife, their heirs, personal representatives, or assigns, beginning on the 1st day of January, 1924, and each ensuing year, the sum of Two Hundred Dollars ($200.00) until one or two wells are actually drilled on said premises, and so long as the said annual gas well rental is paid by the party of the second part such payment shall be so construed and given the same effect as though one or more paying gas wells had in fact been drilled upon the premises during the ten (10) years next ensuing the date of said lease," etc.

In support of defendants' interpretation of the agreement, chief reliance is made on the language in stipulation (a), saying: "That during the life of the said oil and gas lease bearing date on the second day of May, 1916," plaintiffs, the lessors, "will make no further claim or demand for rentals, development or offset wells"; it being urgently insisted that such language is a limitation upon all the obligations of the compromise agreement assumed by both parties thereto. Unless that insistence be true, then this defense herein must fail.

Learned counsel for plaintiffs, with equal earnestness and vigor, argues that the language of the agreement so relied on by learned counsel for defendants contains only a stipulation embodying the chief obligation assumed by *plaintiffs* in that agreement, and that it does not contain or deal with any obligation assumed by *the lessee,* the party of the second part to the agreement, and whose place is now occupied by appellee, the defendant in this action. It is the further contention of the same counsel that the obligation assumed by defendants' predecessor in the compromise agreem\nt is contained in stipulation (b), supra, i. e., to pay to plaintiffs as royalty the sum of $200 per year beginning on January 1, 1924, "until one or two wells are actually drilled on said premises," and that, as long as that was done, it would be accepted by plaintiffs in lieu of drilling a well or wells within the ten-year term of the original lease, and for which substitution plaintiffs would not, as agreed to by them in stipulation (a), demand development or proceed to enforce it, as they could do under the original lease by refusing to accept the deferred rentals therein provided for and serving notice for development; that they agreed to surrender such rights solely upon condition that the second party in the agreement would annually pay to them the $200, not as rentals for failure to develop, but as royalty for as many as two wells if they had been drilled and were producing ones. Therefore, instead of compulsory drilling within the ten-year term of the original lease, the lessee could indefinitely postpone such compulsion by paying the stipulated annual royalty agreed to be accepted in lieu of such drilling. We are convinced from a careful analysis and study of the language and terms of the compromise agreement that the construction contended for by plaintiffs' counsel is the correct one, and that the one that the court evidently adopted is unsustainable.

Under such interpretation, plaintiffs surrendered their *prospects* of reaping greater royalty than $200 per year, if drilling was done, and defendant was guaranteed against the right of plaintiffs to forfeit the lease so long as it paid that annual royalty, entire relief against which could be had by drilling the two wells; and, perhaps, also by convincing proof that neither oil nor gas could be found in paying quantities if such drilling was done. We therefore conclude that the only possible ground upon which the judgment could have been rendered was and is erroneous, and that under the record as brought to us plaintiffs were entitled to a judgment for the unpaid annual royalties of $200 per year from January 1, 1928. But, because the proof was not directed to the proper measurement of damages for the failure of defendant to furnish plaintiffs with domestic gas, no recovery could be had under the present record for that item, and, upon a return of the case, evidence thereon may be taken by the parties, if so desired, and additional proof may also be taken upon the interposed estoppel, if parties desire.

Wherefore, the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.

Whole court sitting.