## Maynard v. Ratliff et al.

March 24, 1944.

J. L. Harrington for appellant.

W. R. McCoy, Jasper H. Preece, Wheeler & Wheeler and S. S. Willis for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

This appeal is prosecuted by G. D. Maynard, who will be referred to as plaintiff, from a judgment denying him a gas royalty of $100 per year from 1935 on a tract of land of 18 acres in Martin County. Plaintiff filed an intervening petition in an action of William V. Ratliff v. Roscoe Kirk et al., which concerned the settlement of the estate of J. D. Kirk, and although he prosecutes this appeal on a partial record it contains everything pertaining to this royalty, hence there is no presumption that that portion of the record not before us would support the judgment.

On March 28, 1911, J. D. Kirk, and wife conveyed to John C. Justice the 18 acres just mentioned, and the deed contained this provision: ·

"The oil and gas, in, on, under the lands hereby conveyed is reserved by party for himself, his heirs and assigns with the right to enter upon said land drill and operate oil and gas wells and when said oil or gas is developed second party is to receive from first party one third of the royalty received for the products of same if gas $50. per well if operated; if oil 1/3 of 1/8 of oil produced."

On April 13, 1912, Justice conveyed this land to the plaintiff Maynard and that deed contains the same exception incorporated in the deed from Kirk to Justice

except it is expressed in better English. We say "exception" because it created in the grantor no new right but withheld the minerals which otherwise would have passed to the grantee. However, the terms "reservation" and "exception" are often confused which fact does not defeat the intention of the parties. Blackburn v. Piney Oil & Gas Co., 278 Ky. 191, 128 S. W. (2d) 192; Clark v. Pauley, 291 Ky. 637, 165 S. W. (2d) 161.

This land was leased for oil and gas development by Kirk and later by his heirs four different times but it was never drilled. Each lease reserved a royalty of 1/8 of the oil and the first one, which was dated June 4, 1911, and continued for a term of 20 years, provided a gas royalty of $150 per year from each well; and also provided an annual rental of $5 if no well was drilled by June 14, 1914. On June 1, 1930, this land was leased to the Warfield Natural Gas Company (hereinafter referred to as Warfield) for five years with a provision that a rental of $1 per acre per year would be paid if drilling was delayed beyond Sept. 13, 1930. On Jan. 8, 1935, this tract was again leased to Warfield for five years which lease by an agreement dated Aug. 19, 1940, was extended five years from Jan. 8, 1941, upon the same terms and conditions. The leases dated June 1, 1930, Jan. 8, 1935, and the extension of Aug. 19, 1940, all reserved a gas royalty of $300 per year from each well, and the 1935 lease and the 1940 renewal provided a rental of $300 per year for failure to drill; and these two instruments permitted the lessee to elect whether it would pay this large rental for delaying operations or drill the property.

Turning to the proof, we find that the plaintiff Maynard has received no part of the rentals paid for failure to develop the lease, and he testified that there is a producing gas well not over 400 feet from the line of the 18 acre tract involved in this litigation. Roscoe Kirk, one of the defendants, testified he did not know of any well on land immediately adjoining the tract in controversy; but he further stated that Warfield refused to give him a contract to drill this 18-acre tract because it was too small to develop.

It is plaintiff's contention that a payment of $300 per year to the lessors on a small tract of 18 acres for the privilege of deferring development does not constitute delay rental, but that it is royalty. He argues this is

especially true in view of the fact that $300 is equal to the annual royalty on one well in the leases executed since 1930, and on two wells in the lease covering the land from 1911 to 1930. The further fact is stressed that the payment of this $300 permitted the lessee to elect whether or not it would develop the property or pay this sum annually.

Defendant insists (a) that the exception in the deed was personal and did not run with the land, and (b) that under the terms of the exception plaintiff's interest in the minerals was limited to the royalty and there could be no royalty unless the land was developed, and as lessee paid $300 rental in lieu of development, the plaintiff was not entitled to any part of this rental.

Plaintiff largely rests his case on Riggsby v. Swiss Oil Corp., 240 Ky. 543, 42 S. W. (2d) 732. But that opinion is not controlling here because the parties there entered into a contract providing the lessor should receive from the lessee $200 annually in lieu of gas royalty from two wells. In dealing with coal this court in Saylor v. Howard, 229 Ky. 826, 18 S. W. (2d) 279, held that royalty to be paid on coal mined is regarded as rent. And in Saulsberry v. Saulsberry, 162 Ky. 486, 172 S. W. 932, Ann. Cas. 1916 E. 1223, when we had under consideration coal and clay, it was written that as the result of usage and custom the terms ''rent'' and ''royalty'' are often used interchangeably. In Crain v. West, 191 Ky. 1, 229 S. W. 51, it was said that oil and gas royalties are ''profits'' if not ''rents'' under KS Sec. 2138, which provides that one-third of the rents and profits of the husband's land shall go to the widow until dower is assigned. It will be noted that the three cases just referred to deal with ''hard'' minerals and not oil and gas, which are considered migratory. In 2 Thornton Oil & Gas, Sec. 363, p. 644, ''rent'' in an oil and gas lease is defined as money paid for delay in starting drilling operations, while ''royalty'' is defined as a certain proportion of the oil found or so much per well where gas is developed. This distinction between ''rent'' and ''royalty'' appears to us to be sound when dealing with migratory minerals such as oil and gas and it is supported by courts of foreign jurisdictions where the question has been raised. Aldridge v. Huston Oil Co., 116 Okl. 281, 244 P. 782; Commissioner of Internal Revenue v. Wilson, 5 Cir., 76 F (2d) 766, 769; Denio v. City of

Huntington Beach, Cal. App., 124 P. (2d) 649, 657; Texas Co. v. Fontenot, 200 La. 753, 8 So (2d) 689, 693; La Laguna Ranch Co. v. Dodge, 18 Cal. (2d) 132, 114 P. (2d) 351, 135 A. L. R. 546.

While it is true Maynard could expect no part of the usual and ordinary rents paid for the privilege of delaying developments, such as contained in the 1911 and 1930 leases, yet this does not mean that the lessor can deprive him of his interest in the royalty by agreeing that the lessee could pay $300 a year rent on 18 acres and never develop the lease. Such an agreement is an independent covenant from that providing for delay payments. 40 C. J. 110, Sec. 728; Hefner v. Light, Fuel & Power Co., 77 W. Va. 217, 87 S. E. 206. This $300 per year is equivalent to the annual gas royalty contained in the first lease on two wells, although in the leases executed in 1930, 1935 and 1940 a royalty of $300 per year was stipulated for each gas well. Thus it would appear that the lessors were making a deliberate attempt to deprive plaintiff of any royalty in this land by agreeing that in consideration of paying $300 per annum the lessee would never have to develop the property, and in 1930 they raised the gas royalty from each well from $150 to $300 so that if plaintiff did recover any of the royalties he would only receive $50 from one well. A court of equity cannot put its approval upon such chicanery. The exception provided plaintiff should receive $50 per well as his part of the royalty from each gas well and as the defendants have received $300 per year since 1935 in lieu of lessee developing the lease, which we find is equivalent to the customary royalty on two wells, we are of the opinion that plaintiff should recover $100 per year from 1935, and interest on the payments as they fell due, as representing his part of the royalty on two gas wells from that date until the filing of his pleading on Aug. 8, 1938, not to exceed $387 the amount for which he sued.

We are not in accord with defendants that the clause in the deed excepting the minerals was a personal covenant and did not run with the land. It is apparent that when the parties inserted the exception in the deed from Kirk to Justice it was their intention that it was not a personal covenant, but one which ran with the land since the deed recited the exception was in favor of grantor, his heirs and assigns, and when the grantee conveyed the property to Maynard his deed contained the same excep-

tion. The criterion for determining whether a covenant runs with the land or is merely personal is the intention of the parties. 26 C. J. S., Deeds, Sec. 150, p. 485; 7 R. C. L. Sec. 18, p. 1101; Ferguson v. Worrall, 125 Ky. 618, 101 S. W. 966, 9 L. R. A., N. S., 1261.

The judgment is reversed with directions to enter one in conformity with this opinion.