**KENTUCKY BANK & TRUST COMPANY, Ancillary Administrator of Estate of Howell Ashby, Deceased, et al., Appellants,**

v.

**ASHLAND OIL & TRANSPORTATION CO., Inc., et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 14, 1958.

Franklin & Franklin, W. R. Tapp, Madisonville, for appellants.

King & Craig, Henderson, McDonald, Alford & Roszell, Lexington, for appellees.

STANLEY, Commissioner.

This is a suit for a declaratory judgment as to who is entitled to receive the land-owner's share or royalty of oil being produced from a 78 acre tract in Hopkins County. The controversy is between Howell Ashby's administrator and his widow,

appellants herein, on the one side, and Clyde C. Combes and others, appellees, herein, on the other side. The Ashland Oil and Transportation Company, as purchaser of the oil, is interested only to the extent of knowing to whom to pay the royalties and protecting itself for what it has paid.

On February 27, 1931, Howell Ashby and his wife, Sallie Ashby, executed an instrument styled a "deed of conveyance" to Ivyton Oil and Gas Company conveying to it "all of the oil and gases and all rights thereto" in the described tract. The consideration stated is "one dollar ($1.00) and other good and valuable considerations." The grantee further agreed that it and its successors and assigns would pay the grantors in addition to that consideration "one-eighth (⅛) of all oil reserved [sic] from the premises." No obligation to drill was assumed by the grantee except · it agreed that "in the event oil is produced in commercial quantities from wells on adjoining premises," the grantee "will drill to protect the first party's interest in the oil;" and in the event gas shall be produced, to furnish free gas to a dwelling house on the premises.

This instrument is identical with that copied in Ramsey v. Yunker, 311 Ky. 820, 226 S.W.2d 14, except the grantors and the land. The instrument was therein construed to be a deed which vested absolute title to the oil and gas in the grantee hence, that the grantee and its successors had not lost, through abandonment, the title and rights therein conveyed.

In November, 1933, the Ashby land was sold under an execution issued on a judgment (no way related to the mineral interests) against Howell Ashby to Clyde C. Combes for $810. Thereafter, the sheriff made Combes a deed to the land with "all appurtenances" subject to the "lease of oil and gas rights" above described. Ashby's wife was not a party to the suit in which this judgment had been rendered, nor to the deed, so her inchoate right of dower was not transferred. Ashby died intestate on April 27, 1954, and the appellant, Kentucky

Bank and Trust Company, was appointed ancillary administrator of his estate in Kentucky. The rights of the Ivyton Oil and Gas Company acquired by the oil and gas deed have by mesne conveyances passed to "numerous persons" who are not named. It is alleged in the complaint that a producing oil well on the premises was drilled about twenty years after Combes acquired title to Ashby's interest in the property. The allegation is traversed in the answer. However, the judgment seems to assume there is such a well. Clyde Combes had assigned one-fourth of his royalty rights to Ross Ashby and wife.

The circuit court construed the reservation in the deed of Ashby and his wife to Ivyton to be "an interest in real estate as to all unaccrued royalty," and adjudged that Ashby's interest or title and rights thereto passed by the sheriff's deed to Combes, but that the inchoate dower right of Ashby's wife did not pass and that it became consummate and vested upon his death. Ashland was ordered to pay the royalties or proceeds to Combes and his assignees except such part as is "attributable to the statutory dower" from and after April 27, 1954, which is to be paid the widow.

The appellants contend that the right to royalty reserved by Ashby and wife in their conveyance to Ivyton was personal property since the promise to pay it was a part of the consideration, which was contingent and deferred until oil should be found, hence, that the right or promise was not an incorporeal hereditament running with the land (as in the case of a mineral lease) and did not pass under the sheriff's deed to Combes.

In opposition, the appellees contend that Ashby and wife reserved one-eighth interest in the oil in the ground, and the reservation was a part of the land levied upon and sold under execution. Coupled with the reservation, they point out, is the grantee's promise that if it should become necessary, it would protect that reserved right from drainage by drilling offset wells and

that it would furnish free gas to a dwelling house, which unquestionably are covenants which ran with the land and passed by the sale and conveyance thereof to Combes.

In approaching the determination of which of the opposing contentions is sound law, we do not consider the several cases cited by the appellants in which it was held that a royalty interest in minerals is personal property, because the cases or the statements to that effect relate to rights in royalties after the minerals have been extracted and reduced to separate possession. When that has been done, the oil or gas becomes personal property and transferable as such, and *accrued* royalty is merely a chose in action and personal property. Summers, Oil and Gas, Vol. 3A, § 572.

A statement in Ramsey v. Yunker, supra, 311 Ky. 820, 226 S.W.2d 14, when taken out of context, supports the appellants' argument that the commitment of the grantees as to the reserved oil and gas constituted a contingent consideration and merely deferred payment. This would indicate that it was no more than a promise to pay money and, therefore, a chose in action which did not pass with the land. But the statement was made in the opinion which was determining only whether the instrument was a deed or a lease. As shown above, the grantee's commitment was, in effect, to take out and put into the pipe line one-eighth of the oil excepted or reserved from the conveyance. It is well recognized that an absolute sale and conveyance of minerals in place, including oil and gas, is a severance of the title to that part of the realty as a separate estate. Williams' Adm'r v. Union Bank & Trust Co., 283 Ky. 644, 143 S.W.2d 297, 131 A.L.R. 1364. And since the owner may convey the surface of land and retain all the minerals, he may except part of the minerals from the conveyance. Summers, Oil and Gas, § 599. And it is well settled that oil in place is a part of the land itself and an oil well is dowable real estate. Crain v. West, 191 Ky. 1, 229 S.W. 51.

It is to be noted that the deed from Ashby and wife to Ivyton did not call for the payment of money or of "royalty" or the value of a share of oil produced. They reserved and were to be paid "one-eighth ($\frac{1}{8}$) of all the oil reserved [produced] from the premises conveyed, same to be delivered free of charge to the grantor's credit in pipe lines when and as recovered." This was, if strictly construed, an *exception* rather than a reservation of one-eighth of the oil. Maynard v. Ratliff, 297 Ky. 127, 179 S.W.2d 200. The covenants of the grantee to produce it and put it in a pipe line for the benefit of the grantors are of a character that "run with the land." Maynard v. Ratliff, supra, 297 Ky. 127, 179 S.W. 2d 200, 201.

For practical purposes, however, the provision was but a reservation of part of the proceeds when received.

The right to *unaccrued* royalties (generally regarded as in effect a reservation of the share of oil in place) retained by or vested in the owner of the land is of the nature of an incorporeal hereditament. It is real property or an interest or estate which passes to the purchaser of the land. Crain v. West, 191 Ky. 1, 229 S.W. 51; McIntire's Adm'r v. Bond, 227 Ky. 607, 13 S.W.2d 772, 64 A.L.R. 630; Williams v. Union Bank and Trust Co., supra, 283 Ky. 644, 143 S.W.2d 297, 131 A.L.R. 1364; 58 C.J.S. Mines and Minerals § 213, p. 538. This is the general ruling where the instrument is a mineral lease providing for the payment of royalties. It is all the more logical construction to hold that a reservation of royalty payable in kind constitutes the reservation of an interest in land. Maynard v. Ratliff, supra, 297 Ky. 127, 179 S.W. 2d 200.

In Marias River Syndicate v. Big West Oil Co., 98 Mont. 254, 38 P.2d 599, Note 101 A.L.R. 885, the owner of land conveyed the same by warranty deed, reserving, however, "a 12½ per cent interest and royalty in and to all oil and gas and other minerals of whatsoever nature, found in or located

upon or under said land or premises above described, or that may be produced therefrom." The excepted interest was thereafter conveyed in various amounts to divers persons. It was held, in a contest between such persons and one who had acquired title to the land itself "together with 70 per cent of the oil and gas rights," that the latter was tenant in common with the former persons, as "owners of the oil and gas," and that the language of the deed "in effect legally and successfully severed the 12½ per cent interest in the oil and gas and other mineral in and under the land from the residue of the oil, gas, and mineral and surface rights conveyed to the grantee." This left title to a fractional interest in the grantor as a species of real property.

It was held in Denver Joint Stock Land Bank of Denver v. Dixon, 57 Wyo. 523, 122 P.2d 842, 140 A.L.R. 1270 (as stated in the A.L.R. syllabus): "The rights of a grantee under a deed of land reserving underlying minerals but providing that the grantee shall receive a fractional part of all minerals and oil produced and saved, and a fractional part of all royalties or rentals for gas, are a part of the realty and not merely rights in personal property accruing only after oil and gas are brought to the surface, and therefore are embraced by a mortgage of land containing no reservation of any oil or gas rights." See also, Thomason v. Veal, Tex.Civ.App., 144 S.W. 2d 361, (reversed on other grounds), Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472.

Therefore, Ashby retained and had the same title to one-eighth of the oil in the ground that he had in the entire surface of the land and all other appurtenances and hereditaments. So, when all of his interest and title was sold under execution, it all passed under the sheriff's deed to Combes.

As stated above, the trial court held the surviving widow, Sallie Ashby, was entitled to an interest equivalent to her dower in the proceeds of the oil from the date of her husband's death. However, the judgment does not settle or define that interest. The appellants contend that the widow was entitled to have her potential interest protected against waste or exploitation, and it had been exploited and depleted. Therefore, it is argued, the court should declare that the widow's share in the proceeds of the oil should be computed from the time title to the land passed under the sheriff's deed to Combes rather than from the time the inchoate right became consummate on the death of her husband. This assumes there had been production.

In Tatum v. Tatum, 174 Ark. 110, 295 S.W. 720, 53 A.L.R. 306, 308, it was held that a wife's inchoate right of dower was entitled to protection from impairment and waste due to drilling wells and exploiting the gas and oil from an interest in lands conveyed by her husband without relinquishment of his wife's dower. The court regarded that interest to be like the interest of a contingent remainderman and that it should be protected by impounding a fund sufficient to cover the damages and investing it for the benefit of the contingency or expectancy. But in Rumsey v. Sullivan, 166 App.Div. 246, 150 N.Y.S. 287, a contrary result was reached. It appears that this decision was rested upon the view that an inchoate dower right is not an interest in real estate and is no more than an expectancy of inheritance. The rule in Kentucky, as it seems to be in Arkansas, is to regard inchoate dower as a substantial right which comes into existence at the time of marriage or later acquisition of real estate by the husband, although the right is defeasible by the wife's prior death. Truitt v. Truitt's Adm'r, 290 Ky. 632, 162 S.W.2d 31, 140 A.L.R. 1127.

In the case at bar the record does not show that any oil had been extracted from the land during the lifetime of Howard Ashby, although the arguments seem to rest upon the predicate that there

had been some production before his death. Unlike the conditions in the Arkansas case above cited, the wife in this case had joined in the mineral conveyance to Ivyton, although she did not join in the later conveyance of the surface and the husband's reserved interest in the oil and gas to Combes. Since the reservation in the mineral deed was an incorporeal hereditament, we cannot say that the widow should share in the proceeds of oil which had been produced before her inchoate right became consummate on the death of her husband. We therefore concur in the judgment to that extent.

We have several cases determining the dower rights of a widow in royalties from oil and gas produced under a lease or contract made by a husband, in which instruments the wives had joined. The cases are fully reviewed in Cook v. Cook's Adm'r, 261 Ky. 501, 88 S.W.2d 27. In that opinion, which tacitly overruled some previous cases, the court held that a widow is entitled to one-third of such royalties absolutely and not merely the interest on one-third during her lifetime, and that such right continues even after dower has been allotted or assigned to the widow. The conclusion is predicated on the conception that royalties are rents and profits.

In the present case, however, having reached the conclusion that the reservation of one-eighth of the oil itself from the original conveyance to Ivyton, coupled with the obligations of the grantee, was an exception from the conveyance so that title thereto remained in the grantors, it logically follows that the receipts from producing such fractional interest in the oil represent the value of that hereditament or one-eighth part of the real estate and not merely "rents and profits." That being so, we are of opinion that the widow is entitled only to the interest or income from the dower therein, namely, interest on one-third of the receipts of the one-eighth part of the oil, or to a fair cash value of that life interest. Since the court did not undertake to render a declaratory judgment as to these definite rights of the parties, the judgment may be extended, and, when extended, it will stand affirmed.

Judgment affirmed.