A. Henry RALSTON and Ingrid Moore, as Co-administrators of the Estate of Michael T. Moore, deceased, for Michael T. Moore; Ingrid Moore, Individually; and Ingrid Moore, as Guardian for the children of Michael T. Moore: Amanda Moore and Sarah Moore, Appellants,

v.

Will Junior THACKER and wife, Cynthia Thacker, Appellees,

Will Junior THACKER and wife, Cynthia Thacker, Cross–Appellants,

v.

A. Henry RALSTON and Ingrid Moore, as Co-administrators of the Estate of Michael T. Moore, deceased, for Michael T. Moore; Ingrid Moore, Individually; and Ingrid Moore, as Guardian for the children of Michael T. Moore: Amanda Moore and Sarah Moore, Cross–Appellees.

Nos. 94–CA–2637–MR, 94–CA–2710–MR.

Court of Appeals of Kentucky.

Aug. 16, 1996.

Glenn W. Denham, Keith Nagle, Denham, Golden & Nagle, Middlesboro, for appellants/cross-appellees.

Gerald L. Greene, Greene & Lewis, Pineville, for appellees/cross-appellants.

Before GUDGEL, JOHNSON and MILLER, JJ.

MILLER, Judge:

Ingrid Moore, as co-administrator of the estate of Michael T. Moore, deceased, for Michael T. Moore; Ingrid Moore, individually; and Ingrid Moore, as guardian for the

children of Michael T. Moore, Amanda Moore and Sarah Moore, bring this appeal from an August 17, 1994, summary judgment of the Bell Circuit Court. Ky. R. Civ. P. 56. Will Junior Thacker and wife, Cynthia Thacker, cross-appeal. We affirm on appeal and cross-appeal.

In February 1977, Will Junior Thacker (hereinafter referred to as "Will Junior") *et ux* leased for oil and gas exploration a large tract of land in Bell County, Kentucky, to Michael T. Moore and W.E. Partin. (Hereinafter this lease is sometimes referred to as "the 1977 lease.") The 1977 lease was upon a "printed form" provided by Moore and Partin. The form appears to be a somewhat modified version [1] of the standard Producers 88 Lease Form.[2] The lease was for a primary term of ten years with the customary 1/8 (1/8 × 8/8) landowner's royalty in the event of production.[3] No bonus was paid for execution and delivery of the lease. It contained a delay rental clause providing for an annual rental payment of one dollar ($1.00) per acre to forestall drilling during the primary term. The lease included the following warranty:

> Lessor hereby covenants that he is seized of an indefeasible fee simple estate in the lands hereinbefore described ... together with all the oil and gas underlying the same, and that he will forever warrant and defend the leasehold estate hereby demised unto the Lessee against the lawful claims and demands of all persons whomsoever....

Although the lease purported to encompass the fee in the described acreage, Will Junior owned only an undivided one-half interest therein. The other undivided one-half interest was owned by Thacker Coals, Inc. (hereinafter referred to as "Thacker Coals"), a Tennessee corporation of which Will Junior was sole stockholder and president.

In February 1978, Partin assigned his interest in the 1977 lease to Moore. On October 15, 1979, Moore assigned the entire leasehold to Wiser Oil Company (hereinafter referred to as "Wiser Oil") for a cash consideration, reserving a "heavy" overriding royalty interest (1/16 × 8/8).[4] In order to develop the leasehold, Wiser Oil acquired a lease of Thacker Coals' undivided one-half interest on October 18, 1979 (hereinafter sometimes referred to as "the 1979 lease.")

In due course, Wiser Oil obtained production on the leasehold and commenced royalty payments to Moore for a 1/32 override rather than the 1/16 reserved in the 1979 assignment. These payments reflected Moore's ownership of only a one-half interest in the land described in the 1977 lease. It appears Moore commenced receiving the lesser overriding royalty payments in 1989. On November 7, 1991, he filed the instant litigation claiming breach of the warranty provision in the 1977 lease. The action was defended on the basis that when Moore and Partin took the 1977 lease, they knew Will Junior owned only an undivided one-half interest in the land. The Circuit Court entered summary judgment, concluding that there was a breach of warranty and awarding Moore damages equal to one-half the delay rental payments made under the 1977 lease.

Moore brings this appeal, claiming entitlement to an additional 1/32 overriding royalty

---

1. Though not relevant to the issue before us, the lease omits the familiar "proportionate reduction" or "lesser interest" clause, a provision designed to protect the lessee from paying royalty on an interest greater than that actually owned by the lessor. 38 Am.Jur.2d *Gas and Oil* § 82 (1968).

2. A Producers 88 Lease Form is an instrument recognized in the oil and gas industry. *See Little v. Page*, Ky., 810 S.W.2d 339 (1991); *Rice Brothers Mineral Corporation v. Talbott*, Ky.App., 717 S.W.2d 515 (1986); *Vaughn v. Hearrell*, Ky., 347 S.W.2d 542 (1961); and 38 Am.Jur.2d *Gas and Oil* § 56 (1968).

3. We observe herewith some terms commonly found in oil and gas leases. A "bonus," as used

in an oil and gas lease, ordinarily signifies a lump sum paid by the lessee to the lessor as consideration for the execution of the lease. *See Davis v. Hardman*, 148 W.Va. 82, 133 S.E.2d 77 (1963). The term "rent" (delay rental) denotes money paid for delay in starting drilling operations, while "royalty" is an amount paid equivalent to the proportion of oil and gas produced. *See Maynard v. Ratliff*, 297 Ky. 127, 179 S.W.2d 200 (1944), and *Vaughn v. Hearrell, supra.*

4. An override upon the entire 8/8 production from a leasehold is sometimes referred to as a "heavy" override, as opposed to the usual override, which is upon the 7/8 working interest.

interest, and the Thackers cross-appeal, claiming Moore was entitled to no award whatsoever.

At the outset, we note that an oil and gas lease is an interest in real property. *See Union Gas & Oil Company v. Wiedemann Oil Company,* 211 Ky. 361, 277 S.W. 323 (1924). The law applicable to oil and gas leases is that applicable to land. *See Piney Oil & Gas Company v. Allen,* 235 Ky. 767, 32 S.W.2d 325 (1930). An oil and gas lease is an interest in real estate generally termed a "chattel real" and is an estate less than freehold or fee-simple interest. *See Dempsey v. Diederich,* 313 Ky. 865, 233 S.W.2d 976 (1950). The execution of an oil and gas lease grants to the lessee only the right to explore for oil and gas. *See Swiss Oil Corporation v. Hupp,* 253 Ky. 552, 69 S.W.2d 1037 (1934). Of course, the parties may insert into a lease any provision desired. *See Rockcastle Gas Company v. Horn,* 241 Ky. 398, 44 S.W.2d 273 (1931).

We are bound to consider the effect of the warranty provision in the 1977 lease. We think it to be a general warranty. Ky. Rev.Stat. (KRS) 382.030 defines "general warranty" as follows:

> **General warranty—Words that constitute.**—A covenant by a grantor in a deed, "that he will warrant the property hereby conveyed," or words of like import, or the words "with warranty," or "with general warranty," in any deed, have the same effect as if the grantor had covenanted that he, his heirs and personal representatives, would forever warrant and defend the property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of all persons whatever.

In this Commonwealth, a general warranty encompasses the covenant of seisin, covenant of right to sell, covenant of freedom from encumbrances, covenant of quiet enjoyment, and covenant of warranty of title. *See Dortch's Ex'r v. Willoughby,* 272 Ky. 231, 113 S.W.2d 832 (1937), and *Eli v. Trent,* 195 Ky. 26, 241 S.W. 324 (1922).

Our attention is directed to the covenants of seisin and warranty of title. The covenant of seisin guarantees that "the grantor is, at the time of conveyance, lawfully seised of the very estate in quantity and quality which he purports to convey." 21 C.J.S. *Covenants* § 17 (1990). It is a personal covenant which operates *in praesenti* and breach thereof arises, if at all, upon delivery of the deed of conveyance. *Id.* The covenant of warranty of title, however, operates *in futuro* and runs with the land. 21 C.J.S. *Covenants* § 22 (1990). It is a pledge "to compensate the grantee in money if title fails, or, in general, to protect against adverse and lawful claims and demands" and is breached only upon eviction or the equivalent. *Id.*

Upon delivery of the 1977 lease, Will Junior was not seised in fee simple absolute of the leased premises. Hence, we believe the covenant of seisin was breached at that time. Additionally, we think Wiser Oil's procurement of the 1979 lease from Thacker Coals constituted the **assertion** of an adverse superior or paramount claim of title constructively evicting Moore and breaching the 1977 lease's covenant of warranty of title. *Cf. Pendleton v. Centre College of Kentucky,* Ky.App., 818 S.W.2d 616 (1990), and 20 Am.Jur.2d *Covenants, Etc.* § 56 et seq. (1985).

If, indeed, the covenants of seisin and warranty of title were breached, Will Junior contends that Moore and Partin knew, when they obtained the 1977 lease, that he was not seised in fee simple absolute of the estate conveyed and that such knowledge bars recovery. We disagree.

Absent special circumstances forming a basis for estoppel, we think a grantee's bare knowledge of a grantor's defective title is no bar to recovery upon breach of either the covenants of seisin or of warranty of title. 6A Richard R. Powell, *Powell on Real Property,* § 900(4) (1996). Title covenants may well be a means by which a purchaser protects himself against known defects. It is a well-established rule of law that a grantee may maintain an action for breach of covenant of warranty of title even though he has actual knowledge that the grantor's title is lacking. *See Bryant v. Engle,* Ky., 335 S.W.2d 731 (1960); *Berry v. Crisp,* Ky., 247 S.W.2d 384 (1952); and *Sweeney & Com-*

*pany v. Brown,* 249 Ky. 116, 60 S.W.2d 381 (1933). We are inclined to recognize the same rule in an action upon the covenant of seisin. 21 C.J.S. *Covenants* § 15 (1990). We are persuaded by *Childress v. Siler,* 272 S.W.2d 417 (Tex.Civ.App.1954). Therein the Court held that knowledge by the assignee of an oil and gas lease as to a defect in the assignor's title was immaterial in an action for breach of covenant of seisin. We, thus, are of the opinion that the grantee's knowledge of the grantor's defective title is no bar to an action upon covenant of seisin. We agree with the Circuit Court that Moore and Partin's mere knowledge of Will Junior's defective title is of no consequence.

Turning to the issue of damages, we believe *Haas v. Gahlinger,* Ky., 248 S.W.2d 349 (1952), to be instrumental. Therein, the Court stated:

> ... [T]he measure of damages, whether for breach of covenant of seizin or breach of covenant of warranty, is that proportion of the original purchase price which represents the value, at the time of the conveyance, of the part of the land lost by the breach, together with interest from that time.

*Id.* at 352. More succinctly, recovery is limited to that proportion of the purchase price applicable to the interest not conveyed. This comports with the fundamental principle of law that damages should reflect just compensation for the injuries actually suffered. We believe it to be the principle relied upon in *Finucane v. Prichard,* Ky.App., 811 S.W.2d 348 (1991). Considering oil and gas leases, we believe the proper measure of damages upon partial failure of the covenants of seisin and of warranty of title to be that proportion of the bonus money and/or delay rentals representing the value of the loss resulting from failure of title. *Cf. Siniard v. Davis,* 678 P.2d 1197 (Okla.Ct.App.1984) (holding that upon breach of general warranty in an oil and gas lease, damages include bonus payment and delay rental). In the case at hand, there was no bonus payment. Therefore, the Circuit Court correctly awarded damages in accordance with payments made as delay rentals.

By deed dated August 14, 1985, Will Junior acquired Thacker Coals' undivided one-half interest and became sole owner of the property. Under the doctrine of after-acquired title, Moore also claims entitlement to an additional 1/32 royalty payment. The record, however, reveals that such issue was not before the Circuit Court. *See Combs v. Knott County Fiscal Court,* 283 Ky. 456, 141 S.W.2d 859 (1940).

The Thackers, in their cross-appeal, contend that the Circuit Court should have dismissed this action as being "time-barred." We disagree. We believe KRS 413.010 to be the applicable statute of limitations in an action upon breach of a general warranty. *See Pioneer Coal Company v. Asher,* 226 Ky. 488, 11 S.W.2d 116 (1928). KRS 413.010 requires an action to be brought within fifteen years of accrual. As previously stated, the covenant of seisin was breached upon delivery of the 1977 lease, and the covenant of title was breached upon Wiser Oil's procurement of the 1979 lease. Moore filed the instant litigation in 1991 claiming breach of the 1977 lease's warranty provision—within the fifteen-year limitation period. Hence, we are of the opinion that the action was not time-barred.

For the foregoing reasons, the judgment of the Bell Circuit Court is affirmed on appeal and cross-appeal.

All concur.